Cock v. Stewart *et al.*, *County Judges, Appellants.*

| 85 | 575 |
| 153 | 170 |

**Constitution**: RAILROAD TAX: STATUTE. Section 32, page 427, Revised Statutes, 1855 (R. S., 1865, chap. 63, sec. 19), which provided that: "If any of the taxpayers in any county or city in which a railroad tax shall be levied, shall have subscribed in good faith to the capital stock of any railroad to which the county shall have subscribed, the said taxpayers shall be entitled to a deduction on the amount assessed against them respectively, in proportion to the amounts of their *bona fide* subscriptions, until the amount of such credits or deductions shall equal the amount of their subscriptions, after which they shall be subject to pay their railroad tax as other persons," was repugnant to the provisions of the constitution of 1865, and hence invalid under that instrument.

*Appeal from Henry Circuit Court.* — Hon. F. P. Wright, Judge.

Reversed.

*C. B. Wilson* for appellant.

(1) The statute under which the exemption from the taxation is claimed is unconstitutional and void. *Life Association v. Board of Assessors*, 49 Mo. 512; *Weeks v. Milwaukee*, 10 Wis. 242. (2) The adoption of the constitution of 1865, article 11, section 16, rendered the statute in question void. *Ramsay v. Hoeger*, 6 Chicago Legal News, 318; *Hills v. Chicago*, 60 Ill. 86. (3) The statute is in violation of the spirit, if not of the letter, of the bill of rights of constitution of 1820: "No private property ought to be taken or applied to public use without just compensation;" see, also, section 16, Bill of Rights of Constitution, 1865, and that even where the constitution is silent the legislature is not omnipotent in its power to tax—that in the very nature of things there must be, and is a limit to the power of the legislature over the people's money as well as their lives; that it has

no power to take the money of one man and give it to another.    Pot. Dwar. on Stat. and Const. 402 ; Cooley on Const. Lim. 490, 1, 2, 3, and 4 ; *Wells v. The City of Weston*, 22 Mo. 384 ; *Sharpless v. Mayor, etc.*, 21 Pa. 168 ; *Broadhead v. Milwaukee*, 19 Wis. 652 ; *Weeks v. Milwaukee*, 10 Wis. 242 ; 16 Mich. 269 ; *The People v. Salem*, 20 Mich. 452 (4 Amend. 400) ; *In the matter of Albany Street*, 11 Wend. 149 ; *Bloodgood v. M. & H. Ry. Co.*, 18 Wend. 56 ; *Taylor v. Porter*, 4 Hill, 140 ; *Powers v. Bergen*, 2 Seld. 367.

*M. A. Fyke* also for appellants.

The legislature has no power to take stock in railroads for counties, nor to compel counties to do so, much less has it power to confer authority on a few individuals to do so.    The direct effect of section 19 of Revised Statutes, 1865, chapter 63, is to enable individuals to force upon counties a double subscription, thereby evading the provisions of section 14, of article 11, of our constitution.    Section 19 is, therefore, unconstitutional and void.    See case of *Ramsey v. Hoeger*, Supreme Court of Illinois, 1874 ; 6 Chicago Legal News, 318, June 27, 1874. The legislature had no power, under the constitution as it existed in 1866, to exempt property from taxation, or to commute the payment of taxes.    *The Life Association of America v. The Board of Assessors of St. Louis County*, 49 Mo. 512.

HENRY, C. J.—In 1873 plaintiff was collector of taxes for Henry county.    In 1870, Henry county subscribed for capital stock in the Tebo & Neosho Railroad Company to the amount of $400,000, for which she issued her bonds. P. A. Ladue, R. Allen, and A. C. and J. M. Avery, also subscribed for capital stock of said company, which issued to them certificates therefor.    When the collector demanded of them their taxes they presented their said certificates of stock, and demanded to have the amount

Cock v. Stewart.

of their railroad tax levied to pay the above indebtedness of the county endorsed on the back of said certificates, which the collector did, and when he made his settlement with the county court the court refused to allow him credit for said sums, aggregating $488.11, of which amount $204.83 represented the taxes assessed against A. C. Avery; $131.11, the amount of taxes assessed against J. M. Avery; $127.25, the taxes assessed against R. Allen, and $24.73, the taxes assessed against Ladue. This action is to compel the county court to receive as vouchers from the collector his receipts from the above named parties for the amount above named, credited on their stock certificates. On a hearing of the cause there was a judgment for plaintiff, from which defendants have appealed.

The plaintiff bases his right to have the receipts credited to him upon section 32, page 427, Revised Statutes of 1855, which is in substance that if any taxpayers in any county in which a railroad tax shall be levied shall have subscribed in good faith to the capital stock of any railroad to which said county shall have subscribed, the said taxpayers shall be entitled to a deduction on the amount assessed against them respectively, in proportion to the amounts of their *bona fide* subscriptions until the amount of such credits shall equal the amount of their subscriptions, after which they shall be subject to pay their railroad tax as other persons. By the thirtieth section of the same act county courts were authorized to subscribe to the capital stock of railroad companies without a vote of the taxpayers. The subscriptions made by the Averys, Ladue, and Allen, were made while the act of 1861 was in force, which repealed section 32 of the Revised Statutes of 1855, *supra*, by the following provision: "Section 3. No person shall be exempt from the payment of his pro rata share of any tax levied by the county court." By the same act, section 2, it was provided that, "It shall not be lawful for the county court

of any county to subscribe to the capital stock of any railroad company, unless the same has been voted by a majority of the resident voters who shall vote at such ·election under the provisions of this act." Section 3 ·of the act of 1861 was omitted from the revision of 1865, but the substance of section 2 of the act of 1861 will be found in section 17 of that revision (General Statutes, page 338), and section 19 of that revision, page 338, re-·enacts section 32 of the Revised Statutes of 1855, page 427.

The law on the subject having been revised in 1865, ·section 3 of the act of 1861, by being omitted, was repealed, and by section 19, the law of 1855, authorizing what is here claimed for individual subscribers for capital stock of a railroad company, was re-enacted. The subscriptions to the capital stock of the railroad in ·question by the individuals above named were made in 1866. By the constitution of 1865 the general assembly was prohibited from authorizing "any county, city, or town, to become a stockholder in, or to loan its credit to ·any company, association, or corporation, unless two-thirds of the qualified voters of such city or town, at a regular or special election, to be held therein, shall assent thereto."

Section 30, article 1, declares: "That all property ·subject to taxation ought to be taxed in proportion to its value." If section 19 of the General Statutes of 1865, *supra*, authorizing individual subscribers to the capital ·stock of a railroad company to pay the railroad taxes assessed against them, by giving credits upon their stock ·certificates for the amount, can be upheld as constitutional the judgment must be affirmed. But that section is so manifestly unjust in its operation that we should give the constitution and the act the closest scrutiny before we declare them in harmony with each other. In the first place, the individual subscribers pay for their stock and get their certificates, and are then reimbursed

by the county. In other words, the taxes legally assessed against them, they are permitted to pay by crediting the amounts on their stock certificates, until the credits equal the amount subscribed by them respectively. The manifest result is that the other taxpayers refund to them the amounts they have severally paid for their stock. It virtually authorizes one man to subscribe for stock and get a certificate for it for his own benefit, and then compels the balance of the taxpayers to pay him the amount of money he paid for his stock. If a tax to raise $50,000 is levied upon all the taxable property of the county, and the tax upon any portion of that property is not collected in money, but is credited upon stock certificates, so much of that burden is cast upon the balance of the taxable property. It amounts to an exemption of that property from taxation which "ought to be taxed in proportion to its value." It was a virtual exemption of that property from taxation, because levying the tax and then in effect giving it to the party against whom it is assessed, is not a compliance with the constitutional provision requiring all property to be taxed in proportion to its value.

We can conceive of no principle upon which such legislation can be upheld. Again, it is evasive of the constitutional inhibition against the subscription to the capital stock of a corporation by the county without submitting the question to a vote of the people. The county had subscribed for $400,000 of the capital stock when no such vote was required. After it was required, individuals of the county are authorized to subscribe for an equal or greater amount, and virtually exempted from taxation for the interest of the former indebtedness of the county, and the amount of taxes their property would pay of that interest is imposed upon the balance of the taxpayers of the county. The constitution of 1865 became the organic law of the state July 4, 1865. The laws revised in 1865 took effect August 1, 1866, nearly one

year after the constitution took effect.   When the indi-viduals above named subscribed for the stock in the rail-road company, the act of 1861, repealing the act exempting them from paying their taxes in money, and allowing them to be credited on their certificates was in force.   The revision of 1865 re-enacted the act so repealed, but it was in conflict with the constitution of 1865.   These views were substantially held by the Supreme Court of Illinois in *Ramsay v. Hoeger*, 6 Chicago Legal News, 518.

We are all of the opinion, for the above reasons, that the judgment should be, and it is accordingly reversed, and the petition dismissed.