DUDLEY C. HALL *vs.* COUNTY COMMISSIONERS OF MIDDLESEX.

Bonds issued under special legislative authority, by a state or city, for aiding in the construction of railroads, are public stocks, and taxable as such, under Gen. Sts. *c.* 11, § 4.

Assessors of taxes are not bound by a list of property brought in for assessment and sworn to, if it appears from an examination of the person who brings it in that it is not true.

PETITION for a writ of *certiorari,* to quash the proceedings of the defendants in refusing to abate a tax assessed upon the petitioner by the assessors of Medford.

It appeared that the excess complained of was a tax assessed upon certain bonds of this commonwealth, to the amount of $9600, and of the city of Albany, to the amount of $17,000. The petitioner carried in to the assessors and made oath to a list of his property which did not include the above bonds, which were then owned by him. The bonds of this commonwealth expressed that the sums therein mentioned were due from the Commonwealth to the holders thereof; and the bonds of the city

of Albany were expressed in the form of a promise to pay the bearer the sums therein mentioned.

The grounds relied on by the petitioner were, 1st, that the list of his property was conclusive, and 2dly, that the bonds were not public securities, but debts due to him, within the meaning of Gen. Sts. *c.* 11, § 4, and that he was therefore entitled to deduct from them the amount which he owed and paid interest for; and the case was reserved by *Gray*, J., for the determination of the whole court.

*T. S. Harlow*, for the petitioner. The list was conclusive. Gen. Sts. *c.* 11, §§ 22–25. *Newburyport* v. *County Commissioners*, 12 Met. 211, 222, 223. *Winnisimmet Company* v. *Assessors of Chelsea*, 6 Cush. 480. *Lincoln* v. *Worcester*, 8 Cush. 55, 64. *Hardy* v. *Yarmouth*, 6 Allen, 284. The bonds were debts due to the petitioner.

*E. C. Baker*, for the respondents.

METCALF, J. By the Gen. Sts. *c.* 11, § 4, " personal estate shall, for the purposes of taxation, include " (among other things) " money at interest, and other debts due the persons to be taxed more than they are indebted or pay interest for, public stocks and securities, stocks in turnpikes, bridges, and moneyed corporations." But stocks and securities are not that kind of personal estate which, by § 14, when "mortgaged or pledged shall, for the purposes of taxation, be deemed the property of the party who has the possession." *Waltham Bank* v. *Waltham*, 10 Met. 334. If therefore the bonds for which the petitioner has been taxed are public stocks or securities, he was rightly taxed therefor, although they were pledged to a savings bank as collateral security for a debt due from him to the bank.

The ground taken by the petitioner is, that these bonds are not public stocks or securities, but are debts due to him, for which he is exempted from taxation, except for so much thereof as exceeds the amount for which he is indebted or for which he pays interest. But as the statute enumerates debts due to the tax-payer, and stocks and securities, as distinct and separate subjects of taxation, the latter are not to be included in the former.

Since the legislature has not defined public stocks and securities the court must ascertain, as they best can, what are such, as cases which raise the question are brought before them for decision.

Both classes of bonds owned by the petitioner were executed and issued by legislative authority, and for a kindred purpose. Those of the Commonwealth were issued under *St.* 1839, *c.* 70, entitled " an act to aid the construction of the Western Railroad," which act authorized the issuing of certificates of debt, in the name of the Commonwealth, for a sum not exceeding one million two hundred thousand dollars, redeemable in London at the end of thirty years from the date thereof, and which should " be deemed a pledge of the faith and credit of the Commonwealth for the redemption thereof." The bonds of the city of Albany purport to have been authorized " by the acts of the legislature of New York." And there are three acts of that legislature, " to authorize the corporation of the city of Albany to borrow money for the purposes therein mentioned ; " one passed on the 11th of May 1837, another on the 4th of May 1839, and the third on the 26th of May 1841. Each of these acts authorized the mayor, aldermen and commonalty of the city to borrow, on the faith and credit of the city, and to execute bonds therefor to be invested in the stock of the Albany and West Stockbridge Railroad Company, its buildings and appurtenances, and " employed and used in the construction of the said road, its buildings and appurtenances, and for no other purposes whatever." The act of 1839 authorized the city to borrow for the above mentioned purposes four hundred thousand dollars, and the act of 1841, three hundred and fifty thousand dollars, and to execute bonds therefor payable in forty years. And the bonds which were made under the authority of these acts, like those issued by the Commonwealth of Massachusetts, provided for half-yearly interest thereon. And it is well known that the Albany and West Stockbridge Railroad was constructed as an adjunct to the Western Railroad, extending from the line of this state to Albany.

From these facts it appears that the bonds of this commonwealth and those of the city of Albany, which the petitioner

owns, were issued under legislative sanction in furtherance of great works which both legislatures deemed promotive of the interests of the public. We therefore are of opinion that the bonds are " public stocks or securities," and were rightly taxed as such. On their face they are denominated stock: those issued by the Commonwealth, " Five per cent. stock of the state of Massachusetts;" and those of the city of Albany, " Albany city stock."

The petitioner carried in to the assessors, and made oath to, a list of his property not exempted from taxation, which list did not contain the bonds in question, and he did not refuse to answer on oath, but did so answer, " all questions put to him by the assessors in relation thereto." And he now contends that his list was conclusive on the assessors as to the amount of personal property for which he was liable to be taxed, inasmuch as the Gen. Sts. *c.* 11, § 25, provide that assessors "shall receive as true the list brought in by each individual, unless on being required by them he refuses to answer on oath all necessary inquiries as to the nature and amount of his property;" as if the list first sworn to by the party must be taken as true, though by his own sworn answers to assessors' inquiries he shows that is not a true list. This is an irrational construction of the statute provision, and if adopted would render nugatory all inquiries by assessors. The manifest purpose for which their inquiries are authorized is to correct the list brought in, or to disregard it, if it appears, from an examination of the party, that he, from a mistaken view of the law, oversight, or otherwise, has not sworn to a true list of all his taxable property. *Petition dismissed*