JOSEPHUS M. ROBERTSON, RELATOR v. COMMISSIONER OF STATE LAND OFFICE.

*Certificate of purchase of State swamp lands—Taxation.*

The interest acquired under a certificate of purchase of State swamp lands is part of the purchaser's individual property, and is subject to the State's taxing power.

No property is beyond the reach of the taxing power of the State unless designedly put beyond it by an unequivocal act of the sovereign power.

The mere omission to exercise the taxing power in particular instances does not establish an exemption therefrom, but is a mere favor which may be recalled at any time without violating the public faith.

The tax laws of Michigan contemplate that the interest held by a purchaser of primary school or swamp lands shall be assessed as personalty, but that the assessment is to be separate from the general valuation of his personal property and must be made in the township where the land lies, irrespective of the owner's residence, and that if the tax cannot be collected by the customary process, his interest in the land shall be forfeited to the State.

A contract made by the State cannot be altered by the State except with the consent of the other party; but the State as a sovereign may subject the interest acquired thereby to the taxing and police power, but only as it might so subject to these powers the interest in any contract between individuals.

The State has power to provide methods for collecting its revenues, and so long as they are general and impartial the courts will not be disposed to limit the exercise of the power merely because they seem harsh, unreasonable and arbitrary.

A purchaser of State swamp lands bought when the conditions entitling him to a deed were that he should pay one-fourth down, and the rest with interest, at any time thereafter. A subsequent statute added the condition to such sales that the taxes should also be paid. The purchaser afterward assigned his certificates of purchase, and the assignee, after paying the rest of the purchase price and the interest, demanded from the Commissioner of the Land Office a certificate entitling him to his deed. The commissioner refused because the taxes had not been paid. Mandamus was granted to compel him to issue the certificate, but it was also *held* that the State did not release any tax lien on the land by giving a deed, and that this would not govern a case where the certificate of purchase had been issued after the passage of the statute.

MANDAMUS. Submitted June 22. Granted Oct. 6.

*W. A. Underwood* for relator. The contracts of States cannot be impaired by legislation: *Fletcher v. Peck* 6 Cr. 133; Cooley's Const. Lim. 275; a law may amount to a proposition on the part of a State, which if accepted by individuals will become a binding contract: Id. 284–5; *People v. State Auditors* 9 Mich. 327.

Attorney-General *Otto Kirchner* for the people.

COOLEY, J. The relator is assignee of Addison P. Cook in the ownership of certain certificates of purchase of State swamp lands in the county of Lenawee, which were issued in the year 1853, and by the terms of which said Cook was to pay one-fourth the purchase price down, and the balance, with interest, at any time thereafter, at the option of the purchaser. The one-fourth was paid when the certificates were issued, and the remainder June 10, 1879. The certificates were assigned to the relator in 1878, and the final payments were made by him. At that time he demanded of the respondent a certificate that the whole of the principal and interest had been paid, and that he was entitled to a deed from the State; but the commissioner refused to give one, because the taxes levied in respect to said land from the time of their purchase remained unpaid, but offered to give one when payment was made. The only question the record presents is whether the land commissioner was entitled by law to require the payment of taxes as a condition precedent to the issue of the certificate demanded of him.

I. In 1853, when the lands were sold by the State, there was no provision of law for the taxation of State lands which had been sold and partly paid for but not conveyed. It is, therefore, claimed that it was not competent for the State to tax such lands; that the sale was a contract between the State and the purchaser that the lands should be conveyed to him on the sole condition of the purchase price being paid; and that any provision of statute imposing the new condition

that taxes should be first paid, was a provision impairing the obligation of contracts and therefore void.

It is to be observed, however, that the certificate of sale by the State contains no stipulation or promise that the land, or the interest of the purchaser therein, shall not be taxed. Neither does the land under which the certificate was issued contain or imply such a promise; it is merely silent on the subject. But the interest acquired by the purchaser becomes thereby a part of the individual property of the purchaser, and is as much subject to the taxing power of the State as any other item of individual property within its limits. No property is beyond the reach of that power unless put beyond it designedly and by an unequivocal act of the sovereign power. *Christ Church v. Philadelphia* 24 How. 302; *Gilman v. Sheboygan* 2 Black 513. Merely refraining from the exercise of the power, though it may raise well-founded expectations that the exemption will be permanent, is not sufficient; for this is a mere favor which may be recalled at any time without any violation of the public faith. *East Saginaw etc. Co. v. East Saginaw* 19 Mich. 259; s. c. in error 13 Wall. 373. And if the revenue law in force at the time is not sufficient to reach the case, it may be made so whenever the State shall choose. The power is undoubted and is ample.

II. Is the legislation which has been passed for the taxing of these lands sufficient to accomplish the purpose?

Provisions for this purpose were introduced in the general tax law of 1853. The eleventh section of that act provided that "Any person holding a certificate of purchase of university or primary school lands, or occupying the same, shall be liable to be assessed therefor as if he were the actual owner thereof: *Provided, however,* that the same shall be assessed as personal property, and not as real estate, and the tax thereon shall be collected in the manner hereinafter prescribed." Comp. L. 1857, § 792. This section was extended so as to include swamp lands in 1858. Sess. Laws 1858, p. 193.

Making these interests taxable as personal property brings some incongruities into the law, for the State apparently con-

templates that each tax payer personally assessed shall be charged at the place of his residence with one aggregate sum which shall be collected of his goods and chattels. Comp. L. 1857, §§ 802, 821, 822. If such interests were taxed under these general provisions, they could only be taxed where the owner resided, and the general valuation of his personalty in one gross sum must be held presumptively to include them. But the subsequent provisions of the tax law of 1853 show that this was not the method in the legislative mind.

The supervisor of any township in which such an interest might be assessed was required, on or before the first day of November, to transmit to the county treasurer a list of the lands with the names of the persons to whom the same were assessed. The county treasurer was to return a like list to the Auditor-General when the taxes failed of collection, and the purchaser must, under pain of forfeiting his interest in such lands and in the certificate of sale thereof, within the time in which the annual interest was required to be paid on the purchase money, pay to the State Treasurer the amount of the taxes, with fifteen per centum interest, from the first day of February, and twenty-five cents for expenses. The lands forfeited were then subject to sale in the same manner that other forfeited and unsold university and primary school lands are. Comp. L. 1857, §§ 935–939.

Taking these sections together they evidently contemplate that though the interests of the purchasers of part-paid State lands are to be assessed as personalty, yet that the assessment is to be made separate from the general valuation of personal property, and in the township where the land shall lie, irrespective of the owner's residence; and that failing to collect from the owner by the customary process, his interest in the land is to be forfeited to the State. There is nothing to preclude the State from providing for the taxation of tangible personalty of any description in this method, if it shall be deemed advisable; and as no defect in the law was pointed out on the argument, we assume that it was sufficient for the assessment and taxation of these lands. Whether the method provided for the collection of the taxes

was a competent and suitable one, will be referred to hereafter.

The fact, however, that peculiar provisions were made for the assessment of these interests has been sufficient to bring confusion into the tax rolls; for we find by reference to these that from the year 1862 to 1877, both inclusive, the assessment was made of the interests as personalty in three years only, and that only in one year, and then only as to the interest under one certificate, was the assessment made to any one as the owner. In other words, the law prescribing the methods of assessment has in most instances been disregarded, so far as relates to the classification of the property, and in every instance has been disregarded in some particulars. Whether the failure to follow the law shall be held fatal to the tax, or whether the provisions not obeyed shall be treated as directory merely, are interesting and important questions, but we are of opinion they do not arise in this case.

III. The State in respect to these lands has been acting in two distinct and quite dissimilar capacities; that is to say, as proprietor in selling them, and as sovereign in taxing them. In the first capacity it treats with a purchaser precisely as any other proprietor might, offering, agreeing upon and accepting terms, and entering into stipulations from which it is not at liberty to depart, and to which it cannot add in the smallest particular except with the assent of the person with whom it is dealing. *New Jersey v. Wilson* 7 Cranch 164; *Piqua Branch Bk. v. Knoof* 16 How. 369. The contract it makes must stand, and the other contracting party is entitled to all suitable remedies upon it. The State as a sovereign cannot deal with it otherwise than as it might with a contract between two private citizens. But the State as a sovereign may subject the interest acquired by the contract to the taxing power and the police power, precisely as it might the interest acquired under any contract between two individuals, and not otherwise.

Now by the original contract of purchase issued under and construed by the statute in force at the time, the purchaser had the assurance of a deed from the State when the pur-

chase price with interest was paid. The subsequent law declares that he shall have this deed only on his presenting a certificate from the commissioner of the State land office showing not only that the purchase price with interest has been paid, but also the taxes, charges and interest levied upon the land. Comp. L. 1871, §§ 3824, 3952. This requirement, it is said, is merely a proceeding for the collection of the tax, and as every sovereignty must select its own means for the collection of its revenues, the method of compelling payment by withholding a deed, is said to be as legitimate as any other.

It must no doubt be admitted that the State may provide modes for collecting its revenues that will seem harsh, unreasonable and arbitrary. Some such are to be found in the laws of Congress, as well as in the legislation of the States. The judiciary would not venture to indicate limits to the power of the sovereign in this regard, so long as its laws were general and impartial. *Sears v. Cottrell* 5 Mich. 251; *Cowles v. Brittain* 2 Hawks 204; *State v. Allen* 2 McCord 55; *McGregor v. Montgomery* 4 Penn. St. 237; *Henry v. Horstick* 9 Watts 412. But there must be many things which are inadmissible, because in their very nature they are arbitrary, and partake of tyranny. Would it be competent, for example, to provide by law that while one's taxes remained unpaid he should not be suffered to purchase provisions in the open market? No one, we think, would pretend this. But if this might not be done, how could a law be defended that should forbid one's cultivating his land, or entering into the possession of it until his tax was paid, or that should require him to furnish a tax receipt to his debtor before the latter should pay him, or to the vender of lands before the latter should perform his contract by conveying to him? In either case the delinquent tax payer is in some one or more important particulars put out of the protection of the laws.

We raise no question here of the right of the State to impose, as a condition to the use of its process, the payment of the tax levied in respect of such process. *Harrison*

*v. Willis* 7 Heisk. 35.   The case before us is not one of that sort.   It is a case in which the State declares that one party to a contract shall not perform it until the other presents evidence that he has paid his taxes.   True the party restrained is the State itself, but that can make no difference.   What it can do in respect to the State contracts, it can do with equal competency in respect to any other.   The State as sovereign cannot take to itself additional powers or privileges or exemptions as a contractor beyond those to which it was entitled under the contract as given.

We are for the reasons stated clearly of opinion that the State could not impose the condition which it now relies upon.   The purchaser or his assignee is therefore entitled to his deed.   But the State does not release any tax lien by giving the deed, and there can be no objection to the deed containing a recital to that effect if the State authorities shall deem it prudent to insert one.

Nothing in this opinion must be understood as authority for a case in which the certificate was issued after the act for taxing these interests and forfeiting them for the non-payment of the taxes was passed.

The writ of mandamus must issue.

The other Justices concurred.