THE STATE ex rel. O'BRIANT, COLLECTOR OF REVENUE FOR SCHUYLER COUNTY, v. KEOKUK AND WESTERN RAILROAD COMPANY, Appellant.

In Banc, December 19, 1899.

1. **County Bonds: REFUNDED: CHANGE IN OWNERSHIP OF RAILROAD.** Refunding bonds issued by a county for the purpose of taking up other bonds which were originally issued in 1871 and delivered to a railroad company for stock subscribed and taken by the county in the railroad, are privileged with whatever exemption from taxation attached to the original bonds, although a different agreement may have been made with the then owners at the time the bonds were refunded, and although the railroad property may have changed hands and be now owned by the company which is resisting taxation on its property for their payment.

2. **Taxation: UPON "ALL PROPERTY."** Where words of general description are used in reference to taxation, such as "all property," they include everything of that kind not expressly or by necessary implication excepted.

3. ———: COUNTY RAILROAD BONDS: RAILROAD LIABLE FOR. Under the Constitution and laws of this State in force in 1871, when a county issued its bonds to be exchanged for stock subscribed and taken by the county in a railroad company, the property of the railroad company in the county, including that which the county's subscription helped to create or construct, which is subject to taxation for general county purposes, is subject to taxation to pay the principal and interest of those bonds.

Appeal from Schuyler Circuit Court.—*Hon. Andrew Ellison,*
Judge.

AFFIRMED.

*Felix T. Hughes* and *Edward Higbee* for appellant.

(1) Section 18, chap. 63, G. S. 1865, on the subject of railroad subscription provides that "upon the making of such subscription by any county, city or town as provided for in the previous section, such county, city or town shall thereupon become like other subscribers to such stock and entitled to the privileges granted and subjected to the liabilities imposed by this chapter." If the county could under the guise of taxation or otherwise withhold or collect back from the corporation or its property any part of the price of its stock, in so far it would be paying less for its stock than other stockholders, such a claim violates the statute and is inequitable and unjust. Rorer on Railroads, p. 1500; Applegate v. Ernst, 3 Bush (Ky.) 648; Louisville & N. R. Co. v. Hopkins Co., 9 S. W. Rep. 76; Owensboro & N. R'y Co. v. Logan Co., 11 S. W. Rep. 76; Macon v. Jones, 67 Ga. 439; Murray v. Charleston, 96 U. S. 432. (2) If the revenue laws of the State in force when the tax in question was levied authorize such levy, then such laws are in bad faith, violate the contract of subscription, impair the obligation of said contract and are there-

fore in violation of the Constitution of the United States and void.   Murray v. Charleston, 96 U. S. 432; Hartman v. Greenow, 107 U. S. 769; Miller v. Wilson, 60 Ga. 505; Macon v. Jones, 67 Ga. 489; Dillon on Mun. Corp. (5 Ed.), secs. 742 and 786.   (3)   The refunding of the original bonds created no obligation on the defendant to pay taxes levied to pay such refunding bonds.   It is not claimed that either the defendant or the Missouri, Iowa and Nebraska Railway Company were in anywise parties to such refunding scheme. Therefore, as to these parties, refunding does not pay the original price of the stock.   Randolph on Com. Sec., 1151 and 1571; Lipold v. Held, 58 Mo. 213; Christian v. Newberry, 61 Mo. 451; Wemer v. Peacock, 31 Mo. App. 245; Lee v. Hollister, 5 Fed. Rep. 752.

*Fogle & French* and *Thomas W. Baird* for respondent.

(1)   As this defendant is the successor of the M., I & N. Railway Company, and as that road was not and could not be exempt from taxation under the Constitution of the State of Missouri, of 1865 and 1875, the defendant is taxable the same as other property in the State.   K. & W. Railway Co. v. State, 152 U. S. 450; Atlantic & Gulf R. Co. v. Georgia, 98 U. S. 59; Maine Central R. Co. v. Maine, 96 U. S. 499; Memphis & L. R. R. Co. v. Berry, 112 U. S. 609; St. Louis, I. M. & S. R. Co. v. Berry, 113 U. S. 465; State ex rel. v. Keokuk & Western Ry. Co., 99 Mo. 30; State v. Atlantic & G. R. Co., 60 Ga. 268.   (2)   It is elementary law that the law of taxation, like all other law, enters into and becomes a part of a contract; that is, the contract is made subject to the power of taxation and changes thereof, otherwise why have an examination clause in a charter?   State v. Railroad, 60 Mo. 143.   (3)   In order to exempt property from taxation, there must be a law clearly granting the exemption.   State ex rel. v. K. & W. Ry. Co., 99 Mo. 30; Bank v. Billings, 4 Pet. 514; McCullaugh v. Maryland, 4 Wheat. 428; Nathan v.

Louisiana, 8 How. 82; Phil. & Will. R. R. Co. v. Maryland, 10 How. 393; K. & W. R. R. Co. v. State, 152 U. S. 450. (4)   The power of a sovereign government to impose taxes extends to all the persons and property belonging to the body politic, and has its foundation in the very nature of society itself. It is granted by all, for the benefit of all, and resides in the government as a part of itself.   Bank v. Billings, 4 Pet. 514; Charles River Bridge v. Warner Bridge, 11 Pet. 420; Nathan v. Louisiana, 8 How. 73; State ex rel v. Shortridge, 56 Mo. 126; Hannibal & St. Joseph R. R. Co. v. State Board, 64 Mo. 294.   (5)   Every statute will be presumed to be constitutional until the contrary plainly appears, and it is only when it manifestly infringes some provision of the Constitution, that it can be declared void.   State v. Cape Girardeau & State Line R. Co., 48 Mo. 468; Phillips v. Railroad, 86 Mo. 540; Railroad v. Shambaugh, 106 Mo. 557; Deal v. Miss. Co., 107 Mo. 464; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Yancey, 123 Mo. 391.   (6)   The exercise of the taxing power must become wanton and unjust—be so grossly perverted as to lose the character of a legislative function—before the judiciary will feel invited to interpose on constitutional grounds.   To arrest the legislation of a free people, especially in reference to burdens self-imposed for the common good, is to restrain the popular sovereignty, and should have clear warrant in the letter of the fundamental law. Schenly v. Alleghany City, 25 Pa. St. 128; Broadhead v. Milwaukee, 19 Wis. 624; Speer v. School Directors, 50 Pa. St. 150.

*Felix T. Hughes* and *Edward Higbee* for appellant in reply.

No claim is made that the railroad company was exempt from taxation by the Legislature of the State for the general taxes; but the simple proposition is that that company can not be made to pay any portion of the subscription made by the

county under section 18, chapter 63, G. S. 1865.    Under this section the Legislature authorized the county to subscribe for stock in the railroad company and provided the conditions upon which subscription could be made and positively stated that upon taking such subscriptions the county would be entitled to the privileges granted and subjected to the liabilities of other stockholders.    Now there is no possible way to avoid this language; either the county must pay as much for its stock as other subscribers and have the same dividends and privileges as other subscribers or else this statute has no meaning.

VALLIANT, J.—This is a suit for delinquent taxes assessed for the year 1894, against property of the defendant corporation in Schuyler county.    The pleadings are in due form and the cause was submitted to the court upon the following agreed statement of fact:

"Upon the consent of the parties, a jury was waived and the cause submitted to the court for hearing. It was agreed in open court by both parties that this is a suit against the defendant, the Keokuk & Western Railroad Company, for taxes levied to pay interest on county bonds of said Schuyler county issued in 1892, and to pay the interest on Liberty township bonds of said county, described in this suit, issued in the same year. And it is further agreed that all the necessary steps have been legally taken for the assessment and levying of the taxes sued for, and that there is no dispute as to the amounts of the taxes sued for provided that the court shall hold that the plaintiff is legally entitled to recover the said taxes under the other facts and agreements herein made.

"It is further agreed that all the taxes herein sued for were levied to pay interest on the said township and county bonds; that said bonds were issued by said county on behalf of itself and said Liberty township for the purpose of taking up and

exchanging same for other bonds which had been issued in 1871 by said county and township and delivered to the Missouri, Iowa & Nebraska Railroad Company for stock subscribed and taken in the last named railway company to aid said company to then construct its railway through said county, and said bonds were received and disposed of and the proceeds used in such construction. It is agreed all the county bonds in suit are the third issue of the original bonds issued for stock, to the Missouri, Iowa & Nebraska Railroad and are renewal and refunding bonds.

"That the railroad was constructed and completed through said county and township in about the year 1871, and was operated and remained in about the same condition until 1886, when the said railway and its franchise were purchased by this defendant, the Keokuk & Western Railroad Company, under a decree of foreclosure and sale of a mortgage placed upon the said railway and franchise by the said Missouri, Iowa & Nebraska Railway Company in the year 1870.

"That this defendant has owned and operated said railway and franchise since its said purchase in 1886, and still owns and operates the same, and that the property is practically in the same condition as when purchased.

"The foregoing stipulation was all the evidence offered or received in the cause. Whereupon the defendant prayed the court to declare the law to be as follows: 'The court upon the evidence and pleadings in this case, will find for the defendant "which declaration the court refused to give, to which refusal of the declaration prayed for, the defendant, by its counsel, did then and there at the time except."

The finding and judgment were for the plaintiff for $1,128.81, upon which a motion for new trial followed, which was overruled, and this appeal taken. The statement of the case on behalf of the respondent contains a history of the transactions relating to the county's subscription, issuance of original and afterwards refunding bonds, foreclosure sale of

the original railroad, its purchase by the defendant, etc. But appellant's counsel in their supplemental brief object to those details as no part of the record and insist that the review of the case on this appeal should be limited to the agreed statement of facts, and we will do so.

The proposition of the appellant is that the county having subscribed to the capital stock of the railroad company to assist in the construction of its road, has no right to include the railroad company's property in the assessment levied on property in the county to pay the subscription; that although the bonds now outstanding, to pay the interest on which this tax is sought to be levied, are refunding bonds, issued after the defendant company had bought the property of the old company, yet they represent the same debt, and if the property in the hands of the original company would not have been liable to a tax to pay the original bonds, it would not be liable in the hands of the present owner who bought it subject only to burdens it bore in the hands of the original owner; and since the present owner was not a party to the refunding contract, its rights could not be affected by the contract made between the county and the then holders of the old bonds.

Appellant is right in its contention that the question of its liability must be carried back to the original contract between the county and the original railroad company, to whose capital stock it became a subscriber. If the property of the railroad company was not liable to a tax levied to pay those bonds, it is not liable to a tax to pay these, because these are but the novation of those, and represent the county's liability to pay the same debt. And the fact that these bonds may differ in their terms, and new considerations enter into them, can not affect this appellant, who was no party to that contract. Nor can the fact that the law of the State may have been changed since the issue of the old and before the issue of new bonds, make any difference, for the State can not pass a law that will have the effect to impair the obligation of a contract.

All contracts however are to be construed as embracing the law applicable to them at the time they are made, and if the law at that time subjects a contract made under its provisions to changes in a certain particular which thereafter may be made in the law, such change would not impair the obligation of the contract. But even that principle would not help the plaintiff in this case if he was forced to rely upon it, because there was nothing in the law at the time the subscription was made that rendered the contract subject to change in the law.

When the defendant railroad company, appellant here, bought the property of the old company under foreclosure sale, this bonded debt was then outstanding, and if the property was not then liable to a tax to be levied to pay it, it is not liable now. This company as vendee is bound in this respect, by the contract made by its involuntary vendor, but it is not bound by a contract made by the county with the subsequent holder of the bonds.

All this being conceded to appellant brings us to the consideration of its first proposition, viz., that under the law as it was at the date of the county's subscription the railroad company's property could not be included with the other property in the county taxed to pay the subscription.

For authorities supporting this proposition appellant relies chiefly on Applegate v. Ernst, 3 Bush. (Ky.) 648, followed in two other cases in that State, and Murray v. Charleston, 96 U. S. 432. There are also two Georgia cases referred to, Miller v. Wilson, 60 Ga. 505, and Mayor of Macon v. Jones, 67 Ga. 489. The first Georgia case referred to, is to the effect that under an act of the Legislature authorizing the levy of a tax on "the taxable property in the State," in the absence of express words including bonds of that State, and in view of the custom that had theretofore existed not to include them, such bonds were not to be listed for taxation. The second Georgia case applied the same principle to an ordinance of the city of Macon, in reference to its city bonds.

Those decisions do not go to the extent of holding that the Legislature could not authorize the levy of a tax on the state bonds.

In Murray v. Charleston, *supra*, the city of Charleston had borrowed money and issued its bonds in payment of the same, bearing six per cent interest, which were held by a resident of Germany. The city passed an ordinance to levy a tax, and included those bonds in the list for taxation, directing the tax as to them to be collected by the city treasurer retaining two per cent at the time of paying the interest. The court held that to allow that would be in effect simply to reduce the obligation to pay six per cent interest to an obligation to pay only four per cent, and that therefore the ordinance was obnoxious to that provision of the U. S. Constitution which forbids a State to pass a law impairing the obligation of a contract. In that case the court say: "Debts are not property. A non-resident creditor can not be said to be, in virtue of a debt due to him, a holder of property within the city; and the city council was authorized to make assessments only upon the inhabitants of Charleston, or those holding taxable property within the same. To that extent the Supreme Court of the State has decided the city has power to assess for taxation. That decision we have no authority to review." The court then go on to discuss the power of a State to tax its own bonds and say: "Is, then, property, which consists in the promise of a State, or of a municipality of a State, beyond the reach of taxation? We do not affirm that it is." The court then quote from the works of Alexander Hamilton: "The true rule of every case of property founded on contract with the government is this: It must first be reduced into possession, and then it will become subject, in common with other similar property, to the right of the government to raise contributions upon it." Two cases are referred to in the opinion, Champaign Co. Bank v. Smith, 7 Ohio St. 42, and People v. Home Ins. Co., 29 Cal. 533, in

which those courts held a tax on the bonds of the respective States valid, and those decisions were not considered in conflict with the principle decided in that case. If, in the Charleston case, the owner of the bonds had disposed of them in the purchase of real estate or other property situate in the city, under the reasoning of the court in that case, such property would clearly have been subject to taxation like other property in the city, to pay those bonds, whilst the bonds themselves would not have been.

The Kentucky case, Applegate v. Ernst, *supra*, is more in line with the position taken by appellant than any other authority cited. In that case the county had subscribed to the capital stock of the railroad company and issued bonds in payment of same which were delivered to the railroad company, and their proceeds used in constructing the road in that county. When it was attempted to include the part of the railroad within the county in the list of property subject to taxation to pay those bonds, the Kentucky court held that such could not be done, primarily because a railroad was an entirety and could not be levied on in fragments, and having held the tax invalid for that reason, then it proceeded to say that moreover the railroad constructed by aid of the subscription, could not be made liable to contribution to pay the subscription, using this language: "If liable for any portion of that subscription, it would, to that extent, pay the debt of the stockholders or remit so much of the amount subscribed to itself, and consequently would get that much less than the subscription to it for its use. . . . To tax the road itself for that selfish purpose would be repudiation to the extent of the tax." This case was afterwards expressly overruled as to the first ground on which the decision rested, Franklin County Court v. L. & N. Ry., 84 Ky. 59, but has been followed on the second point in two other Kentucky cases, cited in appellant's brief. The learned counsel for appellant in their brief say that they have "searched the books in vain to find where any court has ever

questioned this line of cases," etc. If the reference is to the Kentucky cases it would perhaps not be improper to say that whilst we have seen no cases questioning them, we have not been referred to the decision of any court in which they are followed, although their justice is commended in Rorer on Railroads, p. 1500. A further quotation from the Applegate case is: "The object of the tax enjoined is inconsistent with the obligations of the county of Pendleton to pay a specific sum for stock in the railroad, to aid other stockholders to make and equip the road." The deduction intended to be drawn from this is that if the county is allowed to get back in the way of taxation on the railroad any part of the subscription price of its stock, it gets more stock than it pays for, and is placed in a position of advantage over other stockholders who have to pay the full amount for their stock without any draw-back. But whatever might have been the conditions of the county's subscriptions under the Kentucky statute, the result of inequality above indicated would not be reached under our statute. The Kentucky case was founded on a statute of 1859, and was decided in 1868, when the law governing rights and liabilities growing out of county subscriptions to the capital stock of railroad companies had not been as thoroughly tested by experience as it has since. We have no doubt the Kentucky court understood its own statute much better than we do, and that its decision was wise and just as an interpretation of its statute, but it affords us no assistance in the interpretation of our statute, which possesses some important features of its own.

This subscription was made in 1871 to the Missouri, Iowa and Nebraska Railroad Company, and the law of this State as it was at the date of the subscription relating to or affecting the rights and liabilities, both of the county and the railroad company are to be read into that contract as a part of it.

In section 18, chapter 63, General Statutes of 1865, is the provision quoted in the brief of appellant to the effect that

upon the making of the subscription the county shall become "like other subscribers to such stock, entitled to the privileges granted, and subject to the liabilities imposed by this chapter, or by the charter of the company in which such subscriptions shall be made;" and continuing, it is in the same section further provided, that in order to raise funds to pay the subscription, the county court shall "levy a special tax upon all property made taxable by law for county purposes," etc. And at that time section 16, article XI of the Constitution declared: "No property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to this State, to counties, or to municipal corporations within this State." These provisions of the statute and constitution are a part of the contract in so far as they are applicable to it. It is not contended by appellant that its property sought to be subjected to this tax is not within the description contained in the above quotation from the statute, to wit, "property made taxable by law for county purposes;" indeed, the counsel for appellant in their second brief disclaim that it is exempt for general taxation, but insist that it is exempt from taxation for this particular purpose only.

When the Legislature undertook to empower the county to raise funds to meet the obligation, it specified what property should be subject to the tax, and when the railroad company accepted the county's subscription it knew from what source such funds were to come, and it became the agreement of both parties to the contract that all property coming within that description should be subject to taxation for that purpose. It would not be contended that there would be any inconsistency with the county's undertaking, or any impairment of its contract, if, at the time the contract was entered into, the statute had expressly said that for the purpose of raising funds to pay the subscription the county court should "levy a special tax upon all property made taxable by law

for county purposes" including the property of the railroad. The power of the Legislature to make such a provision at the time is not questioned. If the railroad property is included in the general description, there would be no extra force given to the description by adding that it is intended to include the railroad property. Where words of general description are used they cover everything of that kind not expressly or by necessary implication excepted. The learned counsel for appellant, say: "The railroad would have been bound to have helped pay such subscription if the Legislature had plainly said so." If the Legislature had a right to include the railroad property in the taxation, it had no right to exclude it; to have attempted to do so would have been in the face of the constitutional provision above quoted.

The inequality referred to in discussing the Kentucky cases, whatever it may have been under the statute of that State, is entirely avoided by the express terms of our statute, under which the county gets no more stock than it pays for and pays as much as any other shareholder for the shares it acquires.

Under the terms of section 19, chapter 63, General Statutes 1865, when any property owner has paid the tax assessed against his property for the county's subscription to the railroad stock, he is entitled to a certificate from the county court to that effect, which certificate is transferable, and when one obtains sufficient of such certificates to equal in amount the face value of a share of stock, he is entitled to present them to the railroad company, and have a share of the county's stock transferred to him, and so on until all the county's stock is taken up by those who pay the tax. When the railroad company pays its tax it also is entitled to such a certificate, which it may either sell or keep until it has accumulated enough to equal in amount a share, and then have a share of the county's stock transferred to it. A corporation may purchase or acquire by surrender shares of its own stock,

to be re-issued, sold or retired, as the case may be.    [Cook on
Corp. (4 Ed.), secs 29 and 311; Johnson v. Lullman, 15 Mo.
App. 55, affirmed 88 Mo. 567; Hill v. Coal Co., 124 Mo.
153.]    Thus for every hundred dollars of tax the railroad
company pays towards this subscription, if that be the par
value of the stock, it is entitled to a share of same.    If there-
fore the total amount the county pays for all the stock is di-
minished by what the railroad company contributes, the total
amount of stock it receives for the use of its taxpayers other
than the railroad company is diminished to the same degree.
There was a clause in that section to the effect that individual
subscribers to the stock should be credited on their railroad
tax lists with the amounts paid by them on their own sub-
scriptions, which clause, if it had been suffered to go into
effect, would have resulted in depriving the railroad company
to that extent of the benefit of the county's subscription. But
this court in 1885 held that clause to be unconstitutional, and
that unjust feature was removed.    [Cook v. Stewart, 85 Mo.
575.]    As between the original railroad company and the
county of Schuyler the county has paid with its bonds the full
price of the stock and therefore the taxpayers are entitled
to a transfer of certificates of stock as they pay their taxes.
[Spurlock v. Railroad, 61 Mo. 319.]

     The theory of the law is that the stock is the equivalent
for the price paid or agreed to be paid for it, that is the con-
sideration that supports the contract, and that consideration
will continue to support it even though the stock may have
depreciated to little or no value.    The sale of the property
of the Missouri, Iowa and Nebraska Railroad Company under
foreclosure of its mortgage in 1886, and the purchase of the
same by the defendant company, may have had a very de-
pressing influence in the market on the value of the stock
in the first named company, but that does not affect the validity
of the contract of subscription or the rights of the taxpayers
growing out of it.    The old company had the right under

the original contract of subscription on payment of its tax to the amount of the face value of a share of its stock, to have a share of the company's stock transferred to it; when that contract was made it was perhaps contemplated that that stock would be worth its face or more, and if it had been so the company would have been entitled to the advantage; the present company stands in that respect in the shoes of the old, it takes the property subject to the tax, and has the right to demand a transfer of the county's shares in the old company, when it accumulates certificates showing a payment of taxes in sufficient quantity. The stock may not be as valuable now as it was at one time hoped it would be, but that does not affect the contract.

We hold, therefore, that under the Constitution and statutes of this State in force in 1871 when the county subscribed to the capital stock of the Missouri, Iowa and Nebraska Railroad Company, the property of the company in the county including that which the county's subscription helped to create or construct, which was subject to taxation for general county purposes, was subject also to taxation to pay that subscription. Having reached this conclusion upon the premises laid down by appellant, it will be unnecessary to follow the counsel for respondent in their able argument, based on the decision of the Supreme Court of the United States in K. & W. Railroad Co. v. Missouri, 152 U. S. 301, relating to the effect to be given to the consolidation of the Alexandria & Nebraska with the Iowa Northwestern Railroad Company.

The judgment of the circuit court is affirmed. All concur, except *Sherwood, J.*, who is absent.