STATE NATIONAL BANK *v.* CITY OF MEMPHIS.

| 116 | 641 |
|-----|-----|
| 117 | 762 |

## (*Jackson.* April Term, 1906.)

1. **TAXATION.** Payment of city taxes as under protest is not voluntary so as to prevent their recovery, when.

Payment of city taxes by a bank is not voluntary, so as to preclude their recovery by the bank, where, by an agreement between the city and the bank, the bank was permitted to pay the taxes as under protest, with recitals in the agreement that a distress warrant was about to be issued, and that the taxes were paid in view of that fact, and that the city agreed that it would not insist that such payment was voluntary. (*Post, pp.* 646, 647.)

Acts cited and construed, 1873, ch. 44; 1903, ch. 258, sec. 25.

Code cited and construed: Sec. 1059 (S.); sec. 926 (M. & V.).

Cases cited and approved: Lea v. Memphis, 9 Bax., 103; Bright v. Holloman, 7 Lea, 309, 312; Railroad v. Williams, 101 Tenn., 146, 148; Bank v. Memphis, 107 Tenn., 66, 68, 73, 74.

2. **SAME.** Same. Bank paying taxes on its stock for its stockholders under protest may recover same, if illegally collected.

A bank may properly pay the taxes assessed against its stock in the hands of its stockholders and if the payment is made under protest, it can sue for and recover such taxes if illegally collected, and may maintain the suit in its own name without joining the stockholders therein. (*Post, pp.* 647, 648.)

Acts cited and construed: 1903, ch. 258, sec. 25.

3. **SAME.** State bonds are not exempt from taxation by implication.

There is no implied exemption of State bonds from taxation. (*Post, pp.* 648-653.)

Cases cited, distinguished, and approved: Nashville v. Bank, 1 Swan, 269; Nashville v. Smith, 86 Tenn., 213; Smith v. Nashville, 88 Tenn., 464; and cases from other States on pages 648-653 of the opinion.

116 Tenn.—41

Bank v. Memphis.

4. **SAME.** Statute exempting Tennessee State bonds from taxation against certain corporations is unconstitutional and void.
Statute (Acts 1903, ch. 258, sec. 25) providing that, in computing the assessable value of the shares of stock in certain corporations, the assessed value of the registered Tennessee State bonds shall be deducted from the value of the shares of stock, is an attempt to create an express exemption of such bonds from taxation, and is therefore unconstitutional and void. (*Post*, *pp.* 646, 653-656.)

Acts cited and construed: 1903, ch. 258, sec. 25.

Constitution cited and construed: Art. 2, sec. 28.

Cases of other States and of the United States cited, approved, and reviewed on pages 654-656 of the opinion.

5. **STATUTES.** Unconstitutionality of part of a taxation statute does not prevent taxation, where the rest of the statute contains ample provisions therefor.
An unconstitutional provision in a statute (Acts 1903, ch. 258, sec. 25) that the value of registered Tennessee State bonds shall be deducted from the value of shares of stock in certain corporations in assessing the shares of stock does not prevent an assessment for taxation, where the rest of the statute contains ample provisions for the assessment of the shares of stock in such corporations. (*Post*, *p.* 656.)

6. **SAME.** Amendment of a statute by amending the statute which it amended and became a part of.
An amending statute (Acts 1879, ch. 84) becomes incorporated into the amended statute (Acts 1879, ch. 11, sec. 9), and a subsequent amendment of the subject-matter contained in the amending statute may be made by a statute (Acts 1903, ch. 366, sec. 3) purporting to amend the original statute without reference to the said amending statute. (*Post*, *p.* 656.)

Acts cited and construed: 1879, ch. 11, sec. 9; 1879, ch. 84; 1903, ch. 366, sec. 3.

**7. TAXATION.** Validity of acts of board of equalization of taxes cannot be questioned collaterally because one member was not a freeholder.

The contention that the act of the board of equalization of assessment of taxes was void, because one of its members was not a freeholder, as required by statute, is a question that cannot be made collaterally in an action to recover taxes paid under protest. (*Post, pp.* 656, 657.)

**8. SAME.** Assessment may be raised by board of equalization, though no appeal is prosecuted to the board by the person assessed.

The board of equalization of the assessment of taxes has the power and jurisdiction to raise an assessment for taxes, though the person assessed and affected by such action has prosecuted no appeal to the board. (*Post, p.* 657.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

CARROLL, M'KELLAR, BULLINGTON & BIGGS, for Bank.

ATTORNEY-GENERAL CATES, for State.

HENRY F. WALSH, City Attorney, and FLIPPIN & NEUHARDT, for Memphis.

MR. JUSTICE NEIL delivered the opinion of the court.

In the general revenue act of 1903, p. 632, c. 258 of the acts of that year, the following section appears, viz.:

"Sec. 25. That the shares of stock of stockholders of any bank or banking association, savings bank, or loan company, or insurance company, or investment company, or cemetery company, or company or incorporation (other than such as are defined and assessable under sections 22 and 23 of this act) doing business in this State, whether domestic or foreign, shall be assessed and taxed for State, county and municipal purposes as the personal property of the stockholders, whether they reside within or without the State of Tennessee; provided, however, the assessment of such shares of stock as the property of the stockholders shall be in lieu of any assessment or taxation of the capital stock or corporate property of such corporation company, or association. Shares of stock assessable under this section shall be assessed at not less than the actual cash value of the same, less the assessed value of realty and tangible property, which said actual cash value of shares of stock shall be computed by looking to and considering the market value, the actual value of shares of stock and from any other evidence of the value of the same. Real estate and tangible personalty of any corporation, company or association, defined in this section, shall be assessed to the same, in the same mode and manner, and where situate, as other real estate and tangible personalty; but in computing the assessable value of such shares of stock, the assessed value of the realty and tangible personalty and registered Tennessee State bonds owned for a period of not less than six months

Bank v. Memphis.

prior to the tenth day of January preceding, shall be deducted from the value of the shares of stock and the remaining value constitute the value upon which the assessment shall be made. Assessments of shares of stock under this section shall be made at the place, ward, or district of the town or county in which the corporation, association, or company is located. . . . "

In obedience to the direction contained in the following language of the foregoing section, viz., "but in computing the assessable value of such shares of stock, the assessed value of . . . registered Tennessee State bonds owned for a period of not less than six months prior to the tenth day of January preceding, shall be deducted from the value of the shares of stock, and the remaining value constitute the value upon which the assessment shall be made," the tax assessor for the city of Memphis deducted $250,000 as representing the value of such bonds, from the assessment of the shares of stock in the complainant bank, but the board of equalization corrected this action of the assessor, by disregarding this deduction, and raising the assessment accordingly.

Thereupon, an agreement was entered into between the city and the bank whereby the latter was permitted to pay the taxes ($6,840.84) on the shares under protest. This agreement recites that a distress warrant was about to issue and the taxes were paid in view of that fact, and the city agreed that it would not insist that such payment was voluntary.

The tax rate was fixed at $2.15 for the year covered by

assessment in the ward in which complainant bank resides, and the present bill was filed to recover so much of the tax as was paid upon the State bonds.

Upon the allegations of the bill the two principal questions raised by demurrer in the court below and debated here are the following:

On behalf of the complainant it is insisted that State bonds are inherently exempt or nontaxable, on the theory that the State would not have the right to tax its own obligations in the hands of its creditors. But aside from this contention, it is insisted by the complainant that the clause referred to does not create an exemption but only regulates the assessment of the property of banks.

On behalf of the defendant it is insisted that the clause of the act directing a deduction of the amount of State bonds held for six months preceding the assessment was merely an attempt to create an exemption of this class of property, and was therefore unconstitutional and void.

Before considering either of these questions, it is deemed necessary to dispose of two preliminary questions. The first of these is that the money was paid voluntarily, and cannot therefore be recovered. We think this point is covered by the case of *Bright* v. *Holloman*, 7 Lea, 309, 312. In that case, it was held that the taxbook was process equivalent to an execution in the hands of the officer, and payment under protest entitled the party to sue for so much as was deemed; illegal that

this was true, although the taxes involved were county taxes, and no special provision was made for the payment of this class of taxes under protest under the act of 1873, carried into Shannon's Code as section 1059. See also, *R. R. Co.* v. *Williams,* 101 Tenn., 146, 148, 46 S. W., 448, and *Bank* v. *Memphis,* 107 Tenn., 66, 68, 73, 74, 64 S. W., 13. It was also held in a prior case (*Lea* v. *City of Memphis,* 9 Baxt., 103) that although taxes were voluntarily paid, yet if they were illegal the city might lawfully agree to refund them and that her paper obligations therefor would be good. On the same principle, we are of opinion that the city when about to distrain for taxes may make an agreement with the party paying, that such payment is under protest; and it would do right to carry out the agreement in any subsequent litigation instituted concerning such payment. Agreements of this charactor save expensive and embarrassing injunction suits.

The next preliminary point is that the tax was the debt of the stockholders of the bank, and not of the bank itself; therefore that the suit could not be instituted by the bank but only by the stockholders themselves. In respect of this point, we are of the opinion that under a proper construction of section 25 of chapter 258 of page 652 of the Acts of 1903, the bank itself might properly pay the taxes assessed against its stock in the hands of the stockholders. Indeed, it is probably its duty to do so, but we do not decide this point. We need not go into this matter at large. We refer to the last

five paragraphs of the section. We are of opinion that under the portions of the section last referred to, the bank would have the right, at least, to pay the taxes on the stock for its stockholders, and if the payment was made under protest it could sue for and recover such taxes if illegally collected. Of course its recovery would be for the benefit of its stockholders. Having disposed of these preliminary questions, we shall now direct our attention to the merits of the controversy.

We shall first consider whether there is an implied exemption of State bonds. Under the constitution of 1834 it was held that there was an implied exemption of State property (*Nashville* v. *Bank,* 1 Swan, 269) on the principle that it could not be supposed that the State would do so idle a thing as to tax itself for its own benefit, or that it would take money out of its treasury to be returned immediately thereto, or that it would permit its subordinate political divisions to impose such a burden upon it. It was said that the presumption was against the existence of any such intention. This case was followed and applied under the constitution of 1870, in respect of municipal property in the case of *Nashville* v. *Smith,* 86 Tenn., 213, 6 S. W., 273, and *Smith* v. *Nashville,* 88 Tenn., 464, 12 S. W., 924, 7 L. R. A., 469.

The same principle is recognized in other States. *People* v. *Doe,* 36 Cal., 220; *State* v. *Atkins,* 35 Ga., 315, Fed. Cas. No. 5350; *City of Rochester* v. *Town of Rush,* 15 Hun (N. Y.), 239; *Cumru Tp.* v. *Directors of Poor,* 1 Wood W. Dec. (Pa.), 175; *Troutman* v. *May,* 33 Pa.,

455; *McCaslin* v. *State,* 99 Ind., 428; *Camden* v. *Camden, Village Corp.,* 77 Me., 530, 1 Atl., 689; *Newark* v. *Clinton Tp.,* 49 N. J. Law, 370, 8 Atl., 296; *Trustees for Sup. of Pub. Schools* v. *Inhabitants of City of Trenton,* 30 N. J., Eq., 667; *Erie Co.* v. *City of Erie,* 113 Pa., 360, 6 Atl., 136; *Inhabitants of Wayland* v. *Middlesex Co. Commrs.,* 70 Mass., 500; *People* v. *Salomon,* 51 Ill., 52, 53; *Poor, etc.,* v. *School, etc.,* 42 Pa., 21; *Louisville* v. *Comw.,* 61 Ky., 63; *E. & W. Const. Co.* v. *Jasper Co.,* 117 Iowa, 365, 372, 90 N. W., 1006, 94 Am. St. Rep., 301, and authorities cited in note to *Board of Com'rs* v. *Ottawa* (Kan. Sup.), 33 Am. St. Rep., 400-406.

In *Miller* v. *Wilson,* 60 Ga., 506, the principle was applied to state bonds to the extent of holding that it will not be presumed that the legislature intended to tax such bonds merely from a direction that "taxable property" should be assessed, and that the court would not consider the question of the taxability of state bonds as raised in the absence of a provision in a statute expressly directing their taxation. In the *Mayor, etc., of Macon* v. *Jones,* 67 Ga., 489, the same doctrine was applied to city bonds. To the same general effect *City of Augusta* v. *Dunbar,* 50 Ga., 387.

In *Louisiana (State, ex rel.,* v. *Board,* 35 La. Ann., 654), the same rule was applied to State and city bonds. That case also went further and held that such bonds were absolutely exempt, on substantially the same grounds that support an implied exemption of public property.

We are also referred to *State* v. *Stonewall Ins. Co.* (Ala.), 7 South., 753, as sustaining the same view, but that case is hardly an authority for the proposition, since it appears therein that the legislature had power under the constitution of the State to grant such an exempton — that is, one of State bonds — and it had done so.

On the other hand, there are numerous authorities which hold that State, county, and municipal bonds are taxable. *Champaign Co. Bank* v. *Smith;* 7 Ohio St., 42; *People* v. *Ins. Co.,* 29 Cal., 533, 538; *Comw.* v. *Maury,* 82 Va., 883, 1 S. E., 185; *Hall* v. *Middlesex Co. Commrs.,* 92 Mass., 100; *Comw.* v. *City of Phila.,* 27 Pa. 497; *Wilkes Barre Dep. & Sav. Bank* v. *City of Wilkes Barre,* 148 Pa., 601, 24 Atl., 111; *Freese* v. *Woodruff,* 37 N. J. Law, 139; *People* v. *Commrs. of Taxes & Assessments,* 76 N. Y., 64. And see, *State, ex rel.,* v. *K. & W. Ry. Co.,* 153 Mo., 157, 54 S. W., 559, 77 Am. St. Rep., 704. The leading case is *Champaign Co. Bank* v. *Smith,* supra. In that case the court said:

"Admitting, as we do, that a state may, by the express terms of her contract, limit to some extent the future exercise of her sovereignty; and that she may, from consideration of policy, or interest bind herself not to exercise the taxing power over a specified subject-matter; or to exercise this power only in a specified mode, and that the power so to bind herself results from and can only be exercised in virtue of her sovereignity; yet it is very clear that the simple contract of borrowing

money has no relation to her sovereign character or power, and leaves them wholly unimpaired. By such a contract, it is true, a State and an individual are equally bound. The State of Ohio cannot by virtue of her sovereignty cancel or modify a contract to which she is a party; not because it is her contract, but because it is a contract. The lawful contracts of her humblest citizens are equally sacred; she cannot constitutionally impair the obligations of either.

"One man invests capital in State stocks, as a source of income and profit to himself. From the same motive of interest other capital is invested in the bonds of a private corporation, or the notes of individuals. These investments are equally taxed, as property; as sources of profit and income. The consequence is that the profit is diminished in both cases. This is an effect, but not the object of the law imposing the taxation. It contemplates no such purpose. As between the parties, the contract is left in full force; but the property invested or acquired by the contract is taxed, not by way of interference with the rights of the parties as borrower or lender, but for the support of the government and the consequent protection and welfare of the whole community. . . . The principle that in the absence of any stipulation to the contrary, a sovereign State possesses the power of taxing all property held under it, and within its jurisdiction is fundamental and essential to the very being of government. Property can only be acquired and held subject to this condition; and this infirmity

of tenure, if it be one, furnishes the only adequate means
for its protection.

"We readily concede that the State cannot affect the
obligation of a contract to which she is a party, further
or otherwise than in case of a contract between other
parties. But the claim here is that the State shall con-
fer a bonus on her bond holders. For an exemption of
moneys invested in her bonds from the burden of taxa-
tion, common to all other property within the State,
would be a substantial and valuable bonus. In the ab-
sence of any such express stipulation in the contract,
I do not perceive an equitable foundation upon which
to rest a claim to an exclusive privilege, so directly in-
terfering with the sovereign power of the State."

The argument that a decision holding the bonds tax-
able will decrease their value we do not think entitled
to much weight, since the same is true of all property.
It is, without doubt, true, that the States of the union
would be able to realize much higher prices for the land
they have to sell, or grant away, if any exemption from
taxation accompained such grants; yet it has never been
supposed that this was a good reason for implying such
exemption. On the contrary, it is held that such lands
become taxable immediately upon their passing into the
hands of the vendeés or grantees of the State. *Robert-
son* v. *State Land Ofs. Commrs.*, 44 Mich., 274, 6 N. W.,
659; *State* v. *Purcel*, 31 Ohio St., 352; *Townsen*
v. *Wilson*, 9 Pa., 270; *Oswalt* v. *Hallowell*, 15 Kan., 154.
And the same is true, even when public lands are leased,

the leaseholders are taxable. *State* v. *Tucker*, 38 Neb., 56, 56 N. W., 718; *Morris Canal & Banking Co.*, 36 N. J. Law, 471. And so of a mining privilege obtained from a State. *State* v. *Moore*, 12 Cal., 56.

We shall next dispose of defendant's contention, that the clause of the act in question directing a deduction of Tennessee State bonds is but an attempt to create an express exemption of this class of property, and is therefore unconstitutional and void. Such, we think, was the purpose of the clause, and on this ground it must be held void. It violates the clause of the constitution that "all property . . . shall be taxed," and the clause that "taxation shall be equal and uniform throughout the State." Const., art. 2, sec. 28. The section referred to contains a provision that the legislature may exempt certain kinds of property, and shall exempt certain other kinds. Under the first division we find "such property as may be held by the State, by counties, cities, or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational;" and under the second, "$1,000 worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer and his immediate vendee." This section expresses the whole mind of the people of the State in convention assembled, in respect of the properties subject to taxation, and the extent of the power of the legislature to create exemptions therefrom. Its force cannot be dissipated by con-

struction. Similar provisions in other State constitutions have been given a strict construction in support of the taxing power.

In Arkansas it has been held that a constitutional provision that all real property shall be subject to taxation, saving certain excepted kinds therein enumerated, amounts to an inhibition on the legislature's exemption of other real property. *Fletcher* v. *Oliver*, 25 Ark., 289. The constitution of North Carolina (article 5, sec. 3), provides that "all property shall be uniformly taxed." Section 5 provides that the legislature may exempt property held for certain purposes. The supreme court of that State, construing these provisions, held that the legislature could exempt only the property specified in section 5. *Charlotte B. & L. Assn.* v. *Mecklenburg Co. Commrs.*, 115 N. C., 410, 20 S. E., 526. And in *People* v. *Eddy*, 43 Cal., 331, 13 Am. Rep., 143, it was held that, while it was within the power of the legislature, and it was its duty, to prescribe the mode in which all property should be assessed, it could not, under the guise of regulating the duty of assessors, exempt property from taxation which the constitution required to be taxed. And prior to the case in 35 La. Ann. (*State* v. *Board of Assessors*, p. 651), such was the rule laid down in Louisiana. *Morrison* v. *Larkin*, 26 La. Ann., 699; *Lefranc* v. *City of New Orleans*, 27 La. Ann., 188; *City of N. O.* v. *Bank of Lafayette*, 27 La. Ann., 376; *City of N. O.* v. *People's Ins. Co.*, 27 La. Ann., 519; *City of N. O.* v. *N. O. Waterworks*, 36 La. Ann., 432. And that juris-

Bank v. Memphis.

diction seems to have returned to the former doctrine in *Bank* v. *Board of Assessors,* 41 La. Ann., 188, 5 South., 408, wherein it is said: "Reduced to its last analysis, the contention is that a large part of the value of the shares belonging to the individual shareholders is exempt from taxation. . . . We read in the constitution the unequivocal mandates: (1) That 'all property shall be taxed in proportion to its value, to be ascertained as directed by law;' (2) that the following property shall be exempt, and no other. Bank shares are property. They are subject to taxation, and in this State the legislature has affirmatively exercised the power of taxing them."

The case of *Murray* v. *Charleston,* 96 U. S., 432, 24 L. Ed., 760, has been referred to as an authority against the power of taxation of securities by a State or political division thereof which had issued such securities. In that case it appeard the city of Charleston had issued securities bearing six per cent interest, and directed the officer of the city whose duty it was to pay the interest, to deduct the amount of the tax from the interest, and pay over to the holder of the debt only the difference. It was held that this could not be done without a violation of the contract; that a contract to pay six per cent could not be complied with by the payment of four per cent or any sum less than the sum fixed by the contract. It was not denied that the money so paid would be liable to taxation after it had reached the hands of the holder of the security, if he were a resident of the State; or

that the obligations of a State might be taxed by a State. Our conclusion is that State bonds are not exempt from taxation.

But it is said there is no provision in the act of 1903 which would justify an assessment of the shares of stock in any other way than by making a deduction of State bonds. This is a mistaken view. After striking out the unconstitutional clause the residue of section 25 contains ample provisions for assessing shares of stock in banks and other associations and corporations therein mentioned.

It is next insisted that section 3, c. 366, p. 100, Acts 1903, is void because it purports to amend chapter 11, p. 15, Acts 1879, upon the subject of assessment for taxes; whereas there is nothing in the latter act upon the matter of assessment at all. We do not think there is any merit in this point. Section 9 of the act not only contains some provisions upon the subject, but that section is amended by chapter 84, p. 98, Acts 1879, upon the subject of assessments, and by virtue of the amendment the latter act became incorporated into the former; therefore it was not improper that the act of 1903 should purport to amend chapter 11, p. 15, without making special reference to chapter 84.

It is insisted that the action of the board of equalization was void, because one of their number was a nonfreeholder; whereas the act requires that the board shall be composed of freeholders. Such a question cannot be

made in a collateral attack, as the present is, upon the action of the board.

Finally, it is insisted that the action of the board was void, because that body did not act upon any appeal prosecuted by complainants to it; that complainants were content with the action of the assessor in excluding the Tennessee bonds, but the board assumed, itself, to raise the assessment by disregarding such exclusion, and taking into consideration the Tennessee bonds in estimating the value of the shares of stock. We do not think there is any force in this position. The board was created according to the terms of the act, "for the purpose of revising the assessment when returned by such tax assessor." Their duty, as the name indicates, is to equalize the assessments, and in so doing they may make either additions or reductions. While they may entertain appeals of taxpayers, as indicated by the act, from the assessment made by the tax assessor, their jurisdiction is not dependent on these appeals. It is necessary to the proper performance of their duties that they should have a general view of all the assessments, and be able to act upon all as their judgment and conscience may dictate, to the end that all may be equalized, as far as possible.

Our conclusion is that the chancellor acted correctly in sustaining the demurrer to the bill, and his decree must be affirmed, with costs.