WALTER KEITH *et al. v.* FUNDING BOARD OF STATE OF
TENNESSEE.*

*(Nashville.    December Term, 1912.)*

TAXATION.   State bonds cannot be constitutionally exempted from
   taxation in the statute authorizing their issuance and sale.

The provision that "neither the principal nor the interest of said
   bonds shall be taxed by this State or any county or municipal
   corporation thereof, and it shall be so stated in the face of said
   bonds," contained in the funding act of 1913 (Acts 1913, ch. 12),
   authorizing the issue and sale of State bonds in amount suffi-
   cient to pay off the outstanding bonded indebtedness, of the
   State, is unconstitutional and void, because in violation of the
   constitutional provision (art. 2, sec. 28) that "all property,
   real, personal, or mixed, shall be taxed, but the legislature may
   except such as may be held by the State . . . and used
   exclusively for public . . . purposes," etc., because State
   bonds are not mentioned in the exception, and are not within
   the purview of the permissible exemptions, as they are not held
   by the State, and used exclusively, for public purposes; and
   because this constitutional provision is a direct limitation laid
   upon the power of the legislature beyond which that body may
   not pass, and the exception or exemption clause specifically
   limits the power of granting exemptions from taxation, and
   means that all property shall be taxed by the legislature, except
   the particular items specifically mentioned in the said excep-
   tion or exemption clause.

Acts cited and construed:   Acts 1913, ch. 12.

Constitution cited and construed:   Art. 2, sec. 28.

Cases cited and approved: Bank v. Cooper, 2 Yerg., 599, 602;

---

*On the question of the implied exemption of State or munici-
pal bonds, see note in 7 L. R. A. (N. S.), 663.

Keith v. Funding Board.

Andrews v. State, 3 Heisk., 165, 195; Pope v. Phifer, 3 Heisk., 687; Railroad v. State, 8 Heisk., 663, 789, 796, 805; Ellis v. Railroad, 8 Bax., 530, and Commercial Legal Reporter (1877); Railroad v. Gaines, 3 Tenn. Chy., 606-611; Chattanooga v. Railroad, 7 Lea, 576, 577; Lynn v. Polk, 8 Lea, 121, 138; Railroad v. Wilson Co., 89 Tenn., 597, 607; Memphis v. Bank, 91 Tenn., 574, 586, 587; Redistricting Cases, 111 Tenn., 234, 291; State Chancellor v. Elizabeth, 65 N. J. Law, 479; Norfolk v. Perry Co., 108 Va., 28; Thomas v. Taylor, 42 Miss., 651; Trask v. Maguire, 18 Wall., 392, 407; Keith v. Clark, 97 U. S. 454.

Case cited, distinguished, and approved:  Bank v. Memphis, 116 Tenn., 641.

Cases cited, distinguished, and reviewed:  Lynn v. Polk, 8 Lea, 121, 240; Bank v. Knoop, 16 How., 369; Jessup v. United States, 106 U. S., 151; Bank v. New York, 121 U. S., 138, 162; Pollock v. Loan & Trust Co., 157 U. S., 429, and 158 U. S., 630; McCrary v. United States, 195 U. S., 27; Danolds v. State, 89 N. Y., 36; State v. Bank, 2 Hous. (Del.), 99.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.—JOHN ALLISON, Chancellor.

THOS. J. TYNE, for complainants.

*PITTS & McCONNICO and PENDLETON & DEWITT, for Governor and Comptroller.

ATTORNEY-GENERAL CATES, for Treasurer and Secretary of State.

---

*The Attorney-General was of the opinion that the provision of the act challenged by the complainants was unconstitutional, and so argued and briefed the case for the Treasurer and Secretary of State—hence the employment of special counsel to represent the Governor.—Reporter.

Mr. JUSTICE WILLIAMS delivered the principal opinion of the Court.

The bill in equity filed in this suit was by taxpayers of the State of Tennessee, as complainants, against the Funding Board of the State, seeking to have declared unconstitutional and void a provision of an act of the general assembly of Tennessee, approved by the governor on February 21, 1913, authorizing the issue and sale of State bonds in amount sufficient to provide funds with which to pay off the outstanding bonded indebtedness of the State maturing July 1 and August 1. 1913, aggregating approximately $12,000,000.

Of the members of the Funding Board made defendants, the governor and comptroller answered, denying that the provision so attacked was invalid, and insisting upon the constitutionality thereof; and the treasurer and secretary of State in their answers join with complainants in the attack made by them.

The cause was heard on bill and answers, and on complainants' motion for an injunction to inhibit the issuance of the bonds, with an incorporation therein of the feature so denounced by the bill of complainants as unconstitutional and void. The chancellor held that the provision attacked was not unconstitutional, but was within the power of the State, acting through the legislature, denied the injunction, and dismissed the bill. From his decree the complainants and two defendants, the treasurer and secretary of State, have appealed to and assigned errors in this court.

The provision of said act attacked as unconstitutional is the second *proviso* of the second subsection of the first section thereof, which is as follows: "And provided, further, that neither the principal nor the interest of said bonds shall be taxed by this State or any county or municipal corporation thereof, and it shall be so stated in the face of said bonds."

It is insisted by appellants that this provision is in violation of article 2, section 28, of the constitution of the State, which is as follows: "All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes. . . . All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value, but the legislature shall have power to tax merchants," etc.

The contention of appellants, for error, is that the legislature is without power to direct the execution of a contract or to authorize the issuance of bonds by an act which is repugnant to the restrictions imposed by the constitution upon the legislative power; that the people of the State, speaking through the constitution, having ordained that all property shall be taxed, save certain enumerated classes of property which the legislature may exempt, and other classes which it shall exempt, its

power to exempt from taxation is restricted to the enumerated classes, neither of which includes State bonds; that the act in question in its attempt to exempt property in bonds from taxation is repugnant to and in contravention of article 2, section 28, of the constitution, and cannot be made the basis of, or establish a valid contract.

The insistence of appellees is that the question presented by the *proviso* is not one of tax exemption of property, but one relating to the power of the State in contracting to borrow money for governmental purposes; that the real effect of the *proviso* is to recognize and preserve the State's immunity from taxation upon its credit—its power to borrow money to the best advantage; and in so far as any idea or consequence of exemption from taxation is involved, the word "exemption" not being used in the act, it is in reality only an exemption of the State's credit—a thing not touched or affected by the constitution, except as to the purposes for which that credit shall be used.

It may be said by way of premise that the question thus raised is different from the question under immediate decision in the case of *State National Bank* v. *City of Memphis,* 116 Tenn., 641, 94 S. W., 606, 7 L. R. A. (N. S.), 663, 8 Ann. Cas., 22. The question involved and determined in the case of *Bank* v. *Memphis* was that State bonds are taxable in the hands of any one who may hold them, it not appearing that any provision had been made, in the act authorizing their issuance, to exempt them from taxation; whereas, in the present

case, the contention is that the legislature may validly provide in advance of issuance by the act of authorization, and in the face of the bonds, a contract stipulation for their nontaxability, based upon advantages and a consideration accruing to the State itself.

How far the reasoning and principle embodied in the opinion of the court in *Bank* v. *Memphis,* supra, are applicable in the solution of the question here for determination will be adverted to later in this opinion.

A fundamental argument advanced by appellees to support the nontaxability, or the exemption from taxation, of the bonds under consideration, is that the power of the State to borrow for public purposes is a sovereign attribute or function, which was not limited or even touched by the constitution. This argument is met by a denial on the part of appellants, who insist that, while the power to borrow money by means of a bond issue is inherent in the State, nevertheless, the exercise of this power by the State does not involve an attribute of sovereignty, or more than a right inhering in the State as a corporate entity, citing *Bank* v. *Smith,* 7 Ohio State, 53, 54, quoted by this court in *Bank* v. *Memphis,* supra. While it is true that in several cases, including the Ohio case just referred to, the contract of borrowing money is said not to be referable to a State's sovereign power, we believe that these cases mean to have reference to obligations incident to transactions without the scope of sovereign power, or to the *status* of a State in respect of such contract when made; that is, that the State's rights as to construction of the instrument evidencing the contract are no higher than those of the individual with

whom the contract may have been made. When a State's power to issue bonds based on her credit is considered, many cases hold that it inheres in a State in her sovereign capacity. *Piqua Branch Bank* v. *Knoop,* 16 How., 369, 14 L. Ed., 977; *Danolds* v. *State,* 89 N. Y., 36, 42 Am. Rep., 277; *State* v. *Smyrna Bank,* 2 Houst. (Del.), 99, 73 Am. Dec., 699; *Jessup* v. *United States,* 106 U. S., 151, 1 Sup. Ct., 74, 27 L. Ed., 86; *Lynn* v. *Polk,* 8 Lea, 121, 240. It is because the power so inheres in a State that the bonds issued by her are held not to be taxable by the United States; such bonds being but means for carrying on the work of the State government. *Mercantile Bank* v. *New York,* 121 U. S., 138, 162, 7 Sup Ct., 826, 30 L. Ed., 895; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S., 429, 15 Sup. Ct., 673, 39 L. Ed., 759; s. c., 158 U. S., 630, 15 Sup. Ct., 912, 39 L. Ed., 1108; *McCray* v. *United States,* 195 U. S., 27, 24 Sup. Ct., 769, 49 L. Ed., 78, 1 Ann. Cas., 561. Such power may be required to be exercised by the State in times of her dire necessity, or to preserve her existence, and is therefore to be deemed an attribute of her sovereign power.

This conceded, it is argued that the imposition of a tax upon bonds so issued is a tax upon the State's credit, and so far that it must be within the power of the legislature in issuing the bonds to validly stipulate for their nontaxability.

This brings us to a consideration of whether or not it is competent to a State to tax her bonds issued upon her credit. It is apparent that this question differs from that involved in the decisions of the supreme court of

the United States denying power in the federal government to tax such securities of its coordinate sovereignty, which decisions are placed upon the ground that to do so would be to permit one sovereign power, acting in a national capacity, to tax the power of the State in respect of instrumentalities used in the borrowing of money. A sovereign State may, in its own discretion, in the absence of any constitutional prohibition, permit its own agencies or arms of government and its own property to be taxed; and, *a fortiori*, evidences of indebtedness issued on the basis of her credit, even when deemed to be instrumentalities of a State in the exercise of its power to borrow money. *State Chancellor* v. *Elizabeth*, 65 N. J. Law, 479, 47 Atl., 454; *Norfolk* v. *Perry Co.*, 108 Va., 28, 61 S. E., 867, 35 L. R. A. (N. S.), 167, 128 Am. St. Rep., 940; 37 Cyc., 872.

In the Virginia case last cited, it is said that this theory of a State's power to subject property held by itself for its own public purposes is in practical effect but a constitutional concept, since thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. Cooley on Taxation (3d Ed.), 263. Practically all State constitutions, therefore, exempt from taxation property held by the State; but this is far from being true in respect of bonds of a State. *Bank* v. *Memphis*, supra, and cases cited in 7 L. R. A. (N. S.), 663; 37 Cyc., 884.

The present case must turn, for solution, upon the

question whether it is competent for the legislature to create such evidences of indebtedness, stamping the same in the act of creation as immune from taxation in the hands of an after holder, in the exercise of power conferred, or not withdrawn, by necessary implication, by the constitution of the State.

There is no express specific power granted by the constitution to the legislature looking to the issuance of bonds based upon public credit, but the power exists, nevertheless, in the legislature.

But this attribute of power is not to be contemplated as existent independent of, or dissociated form, the constitution. In the case of *Bank* v. *Cooper*, 2 Yerg., 599, 602 (24 Am. Dec., 517), that great jurist, Judge Green, said: *"By the constitution* all the legislative power of the people is vested in the general assembly; and it follows that the legislature may do anything within the legitimate scope of legislation which is not forbidden in the constitution, either in express terms or by implication."

A contention that a legislative power (that of contracting) exists in the legislature, independent of the constitution, is untenable. All power of sovereignty resided in the people, and when a constitution was being ordained by them, they, as the State, judged what provisions should be inserted in their constitution, and how the powers of government should be apportioned in order to their exercise. This distribution of power was made as they pleased and willed in the organic law, and in the quantity they pleased and willed: Cooley, Const.

127 Tenn.—29

Lim. (6th Ed.), 45; *Livingston* v. *Moore,* 7 Pet., 469, 8 L. Ed., 751. The people in a constitution may validly vest a *quantum* of legislative power in a board, beyond the control of their legislature. *Mobile, etc., Commissioners* v. *Putnam,* 44 Ala., 537.

In Cooley's Constitutional Limitations. (6th Ed.), 104, it is said in reference to the *extent* of legislative power: "In *creating* a legislative department and *conferring* upon it legislative power, the people (in the constitution) must be understood to have conferred the full and complete power as it rests in, and may be exercised by, the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose." See, also, Id., p. 108.

The constitution is therefore the supreme law of the land to our legislature. *Pope* v. *Phifer,* 3 Heisk., 687.

In respect of the legislative *power to contract,* the people in our constitution have restricted the same, in the denial of power to their legislative *agent* to contract in a loan of the State's credit in aid of any person (article 2, section 31), and to contract for her ownership of stock in any corporation (Ib.). And in respect of the particular power here in question (bond issuance) it is prohibited to the legislature to issue her bonds to any defaulting railroad company (article 2, section 33). It cannot be denied that the *power* might have been prescribed or restricted in greater detail, in the sovereign's power of attorney to its legislative department.

The declaration of that instrument (constitution 1870, art. 2, sec. 3) that "the legislative authority of this

State shall be vested in a general assembly" carried with it *plenary power* of action within the sphere of the legislative function, *except* so far as restrained by the same constitutional charter; and as a part of that power, as by way of inclusion in, or necessary implication from, the general grant, is this power to issue bonds based upon the State's credit.

The exercise of a legislative power by the general assembly, in order to be prohibited or circumscribed, need not be prohibited or circumscribed expressly. Limitations may attach by force of clear and necessary implication. *Andrews* v. *State,* 3 Heisk., 165, 175, 8 Am. Rep. 8; *Lynn* v. *Polk,* 8 Lea, 138; *Redistricting Cases,* 111 Tenn., 234, 291, 80 S. W., 750, and cases cited.

Considering, now, how far forth the power to issue such bonds is restricted by the constitution, if at all:

As we have seen, embodied in the constitution is an express stipulation that "all property, real, personal, or mixed, shall be taxed" by laws to be passed by the legislature. Accompanying this mandate is an optional power given the legislature to exempt such property as may be held by the State and used exclusively for public or corporation purposes. This court in *Railroad* v. *State,* 8 Heisk., 663, 805, said:

"Limitations on the taxing power are self-imposed by the sovereign, and these alone are to be found in the bills of rights and constitutions vouchsafed to the subject for his protection. No government could exist for a day without this attribute of super-eminent sovereignty. . . . It is the paramount power of all others which

guarantees to the subject absolute protection upon the condition of absolute obedience and promptness in meeting its pecuniary exactions, by which alone it has the power to protect. The government can create its own sources of revenue without restriction, except such as it has imposed upon itself. Its power in this respect is imperial and all-pervading, and in the free States of America it is as unfettered and absolute, to the extent of their territorial jurisdiction, and subject only to the self-imposed restrictions of their own organic laws, as it was in imperial Rome when the 'decree went forth from Caesar Augustus that all the world should be taxed.' The power to tax involves the power to exist."

And again, at pages 794, 795, of the same opinion, in respect of the power of the Legislature under the constitution of 1870 to exempt property, it is said:

"Whatever is the subject of ownership, is actually owned, and is appreciable in value, is *property* in the sense of the constitution; and 'all property shall be taxed' is the imperative, and not merely potential or directory, injunction, which would seem to embrace every conceivable species of property as subject to the burden, except such as are specially exempt, or *may be* exempted at the will of the legislature."

The contention of appellees is, on analysis, that it is within the power of the legislature, for a consideration passing to the State, by way of anticipation, in the greater sums presumably to be paid for the bonds on that account, to make the bonds nontaxable in the hands of purchasers and future holders. This involves, of

necessity, the exemption of such bonds so to be held, under a *contract* supported by a consideration. In respect of the power of the legislature to exempt by contract this court has spoken.

In *Ellis* v. *L. & N. R. R. Co.,* decided by this court at the December term, 1876 (the opinion of the court being reported in the Commercial Legal Reporter of March 11, 1877, but not officially reported, along with Judge McFarland's opinion in 8 Baxt., 530), there was involved the consideration of the power of the legislature to enter into contracts with certain railroads whose existing charters had exempted them from taxation, by which contracts, for a period of ten years, they were released from the method provided for taxing other railroads upon consideration of payment by the former of $1\frac{1}{2}$ per cent. of their gross receipts, such railroads consenting to an amendment to their respective charters to the effect that after ten years no exemptions of any property of the company should exist, but that all such property should be on the same footing as the property of other corporations and individuals. The opinion of the court, as rendered through Chief Justice Deaderick, is quoted by Chancellor Cooper in the case of *Memphis & Charleston Railroad* v. *Gaines,* 3 Tenn. Ch., 606-611; and therein it was held that under the constitution of 1870 it was beyond the power of the general assembly to exempt the property of a railroad from taxation, even in order by the contract to secure to the State a release of the immunity from taxation contained in the railroad's charter. It was argued by the railroad company there involved that the surrender of exemptions in favor of the

road owned by it, under lease or purchase, ought to take the case out of the general rule, but Chief Justice Deaderick said:

"The surrender of the supposed immunity from taxation, though it might be a good consideration for the grant of special exemptions or privileges, in the absence of any constiutional prohibition to make such grant, cannot give validity to an act of the legislature which it is prohibited by the constitution to pass."

Chancellor Cooper, in the case of *Memphis & Charleston Railroad Company* v. *Gaines,* supra, among other things, said in relation to a like contention: "The decision is that the surrender of an immunity from taxation, though a good consideration for anything the legislature can constitutionally grant, cannot confer upon the legislature a power it is expressly forbidden to exercise. The constitutional mandate that 'all property shall be taxed' prevents the legislature from granting any exemption whatsoever, no matter what may be the consideration. It can make no difference, therefore, whether the immunity surrendered be on the same property or on other property, or what may be the consideration, it is beyond the legislative competency to grant an exemption of property from taxation. It is not the nature or extent of the consideration which is to be looked to, but the legislative power. It is precisely as if the constitution had forbidden the legislature to pledge the State credit for any purpose, and the legislature were to undertake to buy up existing indebtedness by pledging the State credit for a longer period. However supreme its authority may be in other directions, or however wise

and judicious may be the exercise of its authority in the particular direction, the question is one of constitutional power. The court says the legislature is expressly forbidden to exempt. Existing exemptions cannot, of course, be interfered with, but new exemptions are beyond legislative competency. It has unlimited power to deal with existing exemptions. The consideration it pays may take any other shape but that. *Trask* v. *Maguire*, 18 Wall., 392, 407 [21 L. Ed., 938]."

In *Railway* v. *Wilson County*, 89 Tenn., 597, 607, 15 S. W., 446, 448, Judge Caldwell had under review an attempted tax exemption by a county court, offered as an inducement for the location and construction of a railroad, and in reliance on which the railroad was thereafter built. After discussing lack of power in the county court, it was said:

"Moreover, we must not be understood as agreeing that the legislature has the power to confer any such authority upon county courts, or to exercise it itself. Section 28 of article 2 of the Constitution requires that equal and uniform taxes shall be laid on all taxable property, and it enumerates the property that may be and that shall be exempt from taxation by the legislature. In that enumeration railroads are not mentioned or included; hence, they must be taxed at the same rate that other property is taxed. . . .

"This constitutional mandate that all property (except that mentioned therein for exemption) shall be taxed prohibits even the legislature from granting any other exemption whatever, no matter what the con-

sideration; and if it attempt to do so, the effort is un-availing and void for want of legislative power. *M. & C. R. R. Co.* v. *Gaines*, 3 Tenn. Ch., 611; *Ellis* v. *L. N. R. R. Co.*, 8 Baxt., 530; *Chattanooga* v. *Railroad Co.*, 7 Lea, 576, 577; *Railroad* v. *State*, 8 Heisk., 789, 796.

"The constitution has declared what property shall be taxed, and what may and what shall be exempt from taxation. Complainant's property is among that which shall be taxed; therefore, there was in 1886, and is now, no power in the legislature or elsewhere to grant the exemption now claimed. It could not be done even upon the understanding that the railway was yet to be located and built, and that it was to be done with foreign capital. It is not the nature or extent of the consideration which is to be looked to, but the legislative power."

Conceiving, as we do, that the legislature has power to issue bonds in a funding of the outstanding bonds, what is the effect of this power, in conjunction with the express constitutional provision that all property shall be taxed, with exceptions not covering bonds? Can the power implied in or as a part of the general grant of legislative power to the legislature be allowed to override the *explicit mandate* in respect of a power, in comparison, the higher and more vital? Rather, both should be construed together, and the exercise of the former be made to depend, in conditions of exercise, upon compliance with the latter. The mandate by clear and necessary implication affects the power.

In *Memphis* v. *Bank*, 91 Tenn., 574, 586, 587, 19 S. W., 1045, 1048, this court, speaking through Judge Caldwell, said:

"So it is, also, with reference to the constitution of 1870. The whole instrument must be taken into consideration, and no part so construed as to impair or destroy any other part. Legislative powers enumerated in one clause must be defined and exercised with reference to limitations and requirements made in other clauses."

See, also, *Lynn* v. *Polk*, 8 Lea, 121; *McKinney* v. *Hotel Co.*, 12 Heisk., 104.

When we turn to other jurisdictions for authority, we find and are cited to no case, decided by a court of last resort, that discusses and decides the exact point before us.

The case of *Pullen* v. *Corporation Commission*, 152 N. C., 548, 68 S. E., 155, decided in 1910, is urged by appellees as supporting their insistence.

The constitution of North Carolina provides that "laws shall be passed, taxing by uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property, according to its true value in money. . . . Property belonging to the State . . . shall be exempt from taxation."

The principal portions of the several opinions in that case deal with questions as to proper assessment for taxation, under the legislative enactments there under review; but the court said in passing upon section 4 of the act, which provided for the nontaxability of State bonds issued under it: "In the hands of the owner, and ever held, and regardless of what part of his money

is invested in them, the State bonds issued under this act are clearly exempted from taxation, general or special, direct or indirect. This being the clear intent and policy of the State, speaking through the legislative department, and exercising a power uniformly recognized and conceded, it is our plain duty to uphold the will of the State and not to be astute to search for ways to evade it."

The constitutional provision, above quoted, was not even referred to; nor was the interrelation of the constitutional bond-issuing power and the above constitutional provision discussed. Evidently the point under discussion in the present case was there not debated but conceded.

Counsel of appellees next urge, upon us that the case of *Champaign County Bank* v. *Smith*, 7 Ohio St., 42, quoted freely in the case of *Bank* v. *Memphis*, supra, is authority for their position.

It appears that there had been no stipulation on the face of the particular bonds in question in that case, nor for nontaxability in the special law of Ohio, under which they were issued. It is argued that the inevitable inference from the language used by the court in that case, quoted by Mr. Justice Neil, in *Bank* v. *Memphis*, supra (therefore not necessary to be here quoted), is that if there had been such a stipulation the court would have held the bonds to have been nontaxable.

It is conceded that the Ohio court therein held that ____ __ _____ tax exemption, and it does not

clearly appear what was the language of the Ohio constitution that was in effect at the date of the enabling act.

It seems, however, that the contention over this phase of tax exemption had a later history in the courts of Ohio. After the decision in *Bank* v. *Smith,* supra, rendered in 1857, the power of the legislature of that State to exempt State bonds from taxation arose in the case of *Probasco* v. *Raine,* in the superior court of Cincinnati, on the bench of which Judge Taft was at that time sitting. The bonds there involved were issued prior to the Ohio constitution of 1851, which is identical in its language with the constitution of North Carolina, quoted above; and Judge Taft, who afterwards displayed great ability on the bench of the United States Circuit Court of Appeals for the Sixth Circuit, said, in respect of the validity of an act undertaking to exempt such State bonds from taxation:

"It is true that the constitution does not execute itself, and if the legislature simply fails in its constitutional duty to pass laws taxing any kind of property, . . . no tax can be collected on it. But when, instead of mere positive disobedience, it expressly enacts an exemption, it is void, and if under the general provisions of the law the property is taxable, the exemption fails and the property must be returned." 21 Wkly. Law Bul. (Ohio), 88, citing *Bank* v. *Smith,* 7 Ohio St., 42, and other Ohio cases.

The case was appealed from the superior court of Cincinnati to the supreme court. That court expressly disclaimed any intention of passing upon

the merits of the question as to the tax exemption. Judge Burket said: "For myself, I think that these stocks [State bonds] are expressly exempted from taxation by the act of April 8, 1856, *taken in connection with the act of February 4*, 1825, and that the act of 1856 is constitutional. But as the court is divided upon this question, the point is left undecided." *Probasco* v. *Raine,* 50 Ohio St., 378, 393, 34 N. E., 536, 539. It thus inferentially appears that, had the bonds been issued after the Ohio constitution of 1851, without reference to power exercised validly under an earlier constitution in respect of the subject-matter of the legislation, the court would have held the tax exemption invalid, as Judge Taft had done.

We are next referred by appellees to the case of *Penick* v. *Foster,* 129 Ga., 217, 58 S. E., 773, 12 L. R. A. (N. S.), 1159, 12 Ann. Cas., 346, decided in 1907, as bearing upon the present issue. That case was decided under the Georgia constitution, by no means identical with ours in respect to the imperative requirement that the legislature shall tax all property. The exemption clause of the Georgia constitution permitted the exemption from taxation of "all public property." The court held that municipal bonds were exempt from taxation in the hands of holders, on the theory that the municipality was an arm of the State government, and that its bonds were by implication excluded from taxation. This Georgia case is directly contrary to *Bank* v. *Memphis,* supra, unless differentiated by the dissimilar constitutional provisions applicable, respectively.

But we find that the supreme court of the United States, in the very recent case of *Berryman* v. *Board of Trustees,* 222 U. S., 334, 350, 32 Sup. Ct., 147, 151, 56 L. Ed., 225, 230, had under consideration a contention that the legislative power of contracting (and in so doing to exempt for consideration from taxation) should not be deemed to be restricted by a clause in the organic law of the territory of Washington, to the effect "that the legislative assembly shall not grant private charters or special privileges." Mr. Chief Justice White, in delivering the unanimous opinion of the court, said (the italicizing ours) :

"We at once, moreover, concede, for the sake of the argument, that the exemption from taxation which was conferred was upon a consideration, and therefore rested in contract, and, if it was in the power of the territoral government to make, is protected from impairment by the contract clause of the constitution. With this concession in mind, and before coming to determine whether the exemption was valid—that is, whether, in and by virtue of the prohibition in the organic law forbidding especial privileges, the territorial legislature was incompetent to grant a contract exemption—we briefly advert to the contention made that a broad meaning must be given to organic act for the purpose, if it can be done, of establishing that there was no limit upon the power of the territorial legislature to exempt. It is conceded that the elementary rule is that exemptions from taxation must be strictly construed. But it is said that this applies only to the contract of alleged exemption, and has

no relation to the inquiry whether the legislature had the power to exempt, because full legislative power must be presumed to exist, unless there is a plain prohibition to the contrary. While we are of opinion that the contention has no direct bearing on the more important proposition here to be decided, we cannot give it, even by silence, our assent, because we consider that it admits, on the one hand, the rule of strict construction, and at once denies it upon the other, by improperly restricting the area of its operation. We say this because, if *in a particular case, the duty arises of determining whether words of restriction found in the fundamental law are intended to operate a limitation on the legislative power to grant contract exemptions from taxation, the rule of strict construction is just as applicable as it would be to a case where it was applied for the purpose of determining whether the particular terms of an alleged contract did or did not embrace an exemption from taxation. We think the rule of construction is as broad as the subject to which it relates, and its operation does not depend upon whether the question is one of limitation of legislative power or of the true interpretation of a contract asserted to be one of exemption* . . .

"It is urged that, as in this case there was a consideration for the especial privilege granted, the agreement of the incorporators to establish and maintain an institution of learning, therefore the exemption cannot be held to be an especial privilege within the intendment of the organic act; since the privilege so bestowed was conferred not as an especial privilege, but as an equivalent

for the contract obligations assumed. *As we have seen, however, it is the contract of exemption which, in the very nature of things, characterizes the grant as an especial privilege.* When this is borne in mind, it appears that the proposition is that the feature which gave to the grant the essential characteristic of an especial privilege must be held to cause it not to be of that nature."

To our minds the reasoning of Mr. Chief Justice White, on this closely related point, is substantially that of this court in cases quoted above, and is therefore conclusive against the construction contended for, and so ably enforced, by counsel of appellees.

Returning, now, to the case of *Bank* v. *Memphis,* supra, the latest deliverance of this court on the subject, and to a consideration of how far the principle of that case is decisive of the present contention: The decision there was based upon a refusal of this court to imply from the constitution of this State a power to exempt State bonds from taxation; the only express intention to exempt being found in the act of the legislature there under consideration. It being conceded by appellees that there is no power expressly granted to the legislature to relieve State bonds from taxes, we are asked to imply that power by way of grafting upon the power of the sovereign to issue bonds an implied power to exempt them from taxation. The court having held in *Bank* v. *Memphis* that there was no power in the legislature to exempt such bonds inferable, in the face of the mandate that all property shall be taxed, we have but to apply the same principle to the different facts of this case—to the at-

tempt on the part of the legislature to render nontaxable, on issue, State bonds as for a contract consideration accruing to the State. As in the case of *Bank* v. *Memphis,* supra, the only express intention to exempt is found in the *proviso* of the legislative act. It is absent from the constitution. The power of exemption from taxation is not so much an incident to the power of borrowing money as it is to the power of taxation, from the exercise of which the supreme law permits the legislature to grant immunity. In a constitution, the natural place for a grant of exemptions and all exemptions, at legislative option, is the article where appears a mandate that the taxing power be exercised. When we look to that article of our constitution, we do not find State bonds to be within the purview of permissible exemptions. We find other kinds of property there closely defined for inclusion.

We recognize the rule of construction that leaves the sovereign not included in, but, so to speak, withdrawn from, the general language of a statute or constitution, unless specifically mentioned. *Dollar Savings Bank* v. *United States,* 19 Wall., 237, 22 L. Ed., 82; *United States* v. *Herron,* 20 Wall., 251, 22 L. Ed., 275; *Lewis* v. *United States,* 92 U. S., 618, 23 L. Ed., 513; *Carr* v. *State,* 127 Ind., 204, 26 N. E., 778, 11 L. R. A., 370, 22 Am. St. Rep., 624; *Seton* v. *Hoyt,* 34 Or., 266, 55 Pac., 967, 43 L. R. A., 634, 75 Am. St. Rep., 641; *State* v. *Crutchfield,* 3 Head, 113.

But in the article of our constitution permitting exemptions the State is mentioned specifically, and its

property, in order to exemption, is required to be *held and used* exclusively for public or corporation purposes.

We cannot undertake to pare away constitutional mandates, or to amend the constitution, by subtle refinements; the legislature may not.

In the dissenting opinion of Mr. Justice GREEN it is indicated that the decision of this case should be based upon the authority of cases by him cited, which hold it to be within the power of the legislature to make immune from taxation the bonds of counties and municipalities and it must be conceded that the power, once admitted as herein contended for, would work to that end, and could not, if put in operation, be substantially different tiated from the power sought to be exercised by the Legislature in the act under review. If the principle urged in that dissenting opinion is sound, we conceive that it will prove a matter of surprise to the bar, and the experienced legislator, in that for the forty-two years following the adoption of the constitution the power, thus contended to be broadly applicable, has never been utilized, nor has it even been sought to be exercised. The constitutional convention of 1870 has been perhaps not improperly described by Caldwell in his Constitutional History of Tennessee, as having been "composed of strong men; it was probably the most intellectual body that ever was elected in Tennessee for any purpose." No inconsiderable portion of its membership was active in affairs of State under that constitution, and as legislators. One of the members sat on this bench, as Chief Justice, and participated in giving trend to the

127 Tenn.—30.

construction of that instrument; and before they passed away, no one advanced, for adoption by the legislature, the doctrine here so earnestly urged on us.

What these, our predecessors, did in making and molding the fundamental law, what our predecessors on this bench said by way of construction so soon thereafter, we have no disposition to cast aside, and to adopt, in lieu, a theory that would, in our opinion, pave the way to special privilege which the framers of the constitution were, concededly, so solicitous to bar and forbid.

Nor can we concur in the validity of the argument, embodied in the dissenting opinion of Mr. Justice Lansden, that the State has power to repudiate her bonds, which power argues for or demonstrates the existence of the power to make them property beyond the reach of her taxing power. The judiciary of a sovereign State will not contemplate an act of baseness on her part as evidencing power. As said by Judge Elliott, speaking to the same point for the supreme court of Indiana: "Might and opportunity do not constitute power in the true sense; to constitute power, another element must be present, and that element is right." *Carr v. State*, 127 Ind., 204, 26 N. E., 778, 11 L. R. A., 370, 22 Am. St. Rep., 624.

It is true that the State may, by failure to make appropriations, defeat a just claim against her, and that she cannot be sued in respect thereof. But this does not go to the substance of the contract, which is and remains valid, under her conceded power to make it. The State, by might of nonaction, may defeat a just noncontract

claim, equally with one resting on contract. Immunity of a sovereign from suit is wholly distinct from, and has no proper relation to, her power to validly engage herself by contract. Another insistence of appellees is that even if the *proviso* in the legislative act in question be deemed an exemption from taxation, the bonds being, at the time the exemption was declared and effected, the property of the State and held for public purposes such exemption is within the purview of article 2, section 28, of the constitution, and valid; that the bonds, being owned by the State when stamped as immune, continue so to be through the life the bonds. The case of *Chester County* v. *White Bros.*, 70 S. C., 433, 50 S. E., 28, is cited as sustaining this contention. That decision was rested on a constitutional provision in respect of tax exemption materially different from ours, and peculiar in its phraseology.

It suffices to respond to the contention that until emitted from the treasury by the State, her bonds have no *status* as property, and only until they become property are they subject to taxation. When they become property, they must be taxed along with all other property, unless the legislature may exempt them, and that it may not we have just held.

The last contention of appellees is that the attempt to issue the bonds as nontaxable securities may be supported as a valid exercise of the police power on the part of the legislature. On consideration, we hold that we have not here presented a case falling within the power thus invoked.

The chancellor was in error, as herein indicated, and it results that his decree is reversed, and remanded for further proceedings in accord herewith.

MR. JUSTICE BUCHANAN delivered a concurring opinion, as follows:

The provision of the act in question which exempts the bonds authorized to be issued by the act from taxation by the State or any county or municipality thereof must depend for validity upon the power of the legislative department of the State to create such an exemption. The constitution of 1870 divides the powers of the State government into three departments, and these departments are legislative, executive, and judicial. Article 2, section 1.

No person or persons belonging to one of these departments shall exercise any af the powers belonging to either of the others, except in cases directed or permitted by that constitution. Article 2, section 2.

A state is defined by Vattel to be a body politic or a society of men united to promote their safety and advantage by means of their union, who are guided and directed by a public political authority or government. "The government is the ligament that holds the political society together, and when that is destroyed, the society, as a political body, is dissolved." *Thomas* v. *Taylor*, 42 Miss., 651, 2 Am. Rep., 635; *Keith* v. *Clark*, 97 U. S., 454, 24 L. Ed., 1071.

In the case last named it is said:

"Such a society has her affairs and her interests. She deliberates and takes resolutions in common, thus

becoming a moral person, who possesses an understanding and a will peculiar to herself, and is susceptible of obligations and rights."

The State of Tennessee, under her constitution of 1870, is then a body politic, the component parts of which are individual citizens, united under that constitution for purposes of government, that government to be carried on and administered by means of the three agencies above named. Each of these three agencies in their respective spheres are bound by the constitution to act within the scope of the powers conferred by that instrument. No one of the three agencies may do an act outside of the scope of its authority as limited by the constitution; and an act done by any one of such agencies outside of the scope of its authority is void.

An act of the legislature, therefore, can only be valid when it is within the powers granted to that department by the constitution of the State, either by express provision or necessary implication from the nature of the powers which this department is required to exercise in the general scheme of the government of the State. There is no express power conferred by the constitution on the legislative department to pass an act authorizing the issuance of bonds, but it has long been held that such power existed as one of necessity. The existence of this power arising out of no express grant but out of necessity does not, however, carry with it, as an incident, the exercise of any further power than the necessity of the State requires to be exercised. The power of taxation is a sovereign power of the State. It is that power in the State which makes possible its existence, and, be-

ing so, it is its highest and most important power.  It is infinitely more important than the power of the State to borrow money.  The latter power is a mere business act on the part of the State, such an act as the most necessitous man may do.  But the State's power to tax is its highest power, the basis of its credit.  And it seems a very far cry to hold that a concession by the State of power in its legislative department to perform the sordid business act of borrowing money carries with it as an incident the right to exercise the very highest power which the State possesses, and which, if improperly or unfaithfully exercised, might produce the greatest mischief to the State, going even to the extent of imperiling its existence.

Is it fair to the State to assume that the silence of the constitution upon the subject of legislative authority to pass an act providing for the issuance of bonds is to be taken as an indication that, in the esteem of the State, its power to borrow money stands higher than its power to tax, and that in default of express authority conferred by the constitution upon the legislature to pass such an act an implied authority to do that act will be held to exist, and to carry along with it another implication that the legislative department is clothed with authority to invade and nullify the taxing power of the State by granting an exemption from taxation under the guise of contract or whatever other guise?  I think not.

Even in the absence of any express provisions of the constitution to the contrary of the last proposition, it would not be fair to imply that the constitution by si-

lence in respect to the agency through which the State might act in the borrowing of money conferred upon the legislature the power to tamper at its will with the right of the State to collect or not collect taxes upon property having a taxable *situs* within its borders; for to admit such an implication to be fair is to say that the legislative department is the State, that the creature has become more powerful than the creator, and that the agent has usurped unto himself the identity and the power of the principal.

But the constitution of 1870 is not silent as to the power of the legislature to tamper with the highest prerogative and most sovereign power of the State. By article 2, section 28, of that instrument, it is provided that:

"All property, real personal, or mixed, shall be taxed, but the legislature may exempt such as may be held by the State by counties, cites, or towns, and used exclusively for public or corporation purposes; and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational," etc.

Here a direct limitation is laid upon the power of the legislative department of the State beyond which that body may not pass. By it the principal says to the agent: Do not invade my taxing power. That power I reserve to myself. You must not attempt to invade it under the guise of the execution of any other power which I may have conferred upon you by this instrument.

And it matters not by what shift or device the agent

may attempt to invade the sanctuary of action which the sovereign State as principal has reserved for its own sphere of action.    The act of invasion is void and of no effect.

For the reasons above indicated, I think the attempted exemption of the bonds from taxation cannot be upheld., And for these reasons I concur in the result reached by Mr. Justice Williams in delivering the opinion of the majority of the court.

Mr. Chief Justice Neil delivered a concurring opinion as follows:

No power can be implied in, ascribed to, or exercised by the legislature, which is contrary to any express inhibition of the constitution.   I deem this principle self-evident, and believe that its maintenance is essential to the preservation of constitutional government.

If I correctly understand the dissenting opinion of Mr. Justice Lansden, it is based on the fundamental error that there is a higher power than the constitution, resting on the theory of the inherent sovereignty of the State, acting through the legislature, as its organ, in the making of contracts deemed essential to the public good. It is said that, when the soverign power of contracting is exercised through the instrumentality of bonds issued on the faith and credit of the State, the exemption of these bonds from taxation is a mere incident, and that such exemption is essential, in order that the State may enter the marts of the world on a parity with other States, in the sale of its securities for the purpose of obtaining money to carry on its governmental activities.   It is a

necessary inference from this position that, whenever the legislature may find it essential to make a contract of any kind to obtain money for urgent State purposes, no restriction upon the legislative power can be recognized. Charters are contracts. According to the principle insisted on, the legislature, for a sum of money to be paid to the State, deemed an adequate consideration, might grant charters to any number of corporations, exempting their property from taxes for a long term of years, or even perpetually; also, as a consequence of the same principle, the legislature might issue bonds, making the coupons receivable for taxes, sell them in the marts of the world, allow them to thus become contracts which could not be altered, in view of the restrictions in the federal constitution against impairing the obligation of contracts, and the State's revenues, its life blood, might thereby be mortgaged for generations, and the practical control of its finances taken out of its hands by the national courts. It is true that the decision in *Lynn* v. *Polk,* 8 Lea, 121, would be an apparent obstacle in the way of such result; but if the direct inhibitory provisions of the constitution do not afford an effective barrier under the doctrine we are considering, a former decision of the court in opposition to such doctrine would not be permitted to stand.

There is a section of the constitution (article 1, section 22) which provides: "That perpetuities and monopolies are contrary to the genius of a free State, and shall not be allowed." But a large fund might be raised for the use of the State by means of laws granting

monopolies, fixing their price at great sums, under the operation of the destructive principle which we are combating—a favorite means of raising money in ancient times by the kings of England. Section 30 of the same article reads: "That no hereditary emoluments, privileges, or honors shall ever be granted or conferred in this State." But this, also, under the same principle, might be disregarded; and money raised by the sale of such honors, privileges, and emoluments. The effect of the violation of these two sections would, in a few years, bring upon the State all of the evils suffered in former times by the mother country from monopolies, and now from hereditary privileges.

There is another provision of the constitution (article 2, section 31) which provides: "The credit of this State shall not be hereafter loaned or given to or in aid of any person, association, company, corporation, or municipality; nor shall the State become the owner in whole or in part of any bank, or a stockholder with others in any association, company, corporation, or municipality." But much money might be obtained by the State through disregard of this section. The bonds of the State, containing a clause exempting them from taxation, for a great consideration in money, might be sold, or lent, to or in aid of corporations; likewise the State might become, with the expectation of great profit, a stockholder in banks and other corporations. Under the principle stated that the credit of the State may be used to raise money in the most available form when it is needed, these abuses and others already mentioned

might be repeated, and all of the terrible evils which the State suffered just before and just after the Civil War would again be visited upon her. It was urged then, as now, that the welfare of the State required the action taken. As a result of the policy then adopted, not only was a vast indebtedness loaded on the State, but in addition it was found that most of the railroads had been exempted from taxation and many of the banks. A large part of the most valuable property in the State was relieved of taxation, and the burdens of government cast upon other property, principally land, with these ordinary burdens augmented by a gigantic debt.

I need not go into the details of the history of that period. Upon reflection, these will occur to any one who desires to consider the subject. Fresh from these evils, the members of the Convention of 1870 prepared an instrument under which it was hoped and believed that they could never be repeated. For more than forty years that expectation has been justified, and we trust will continue to be justified. Up until within the last few weeks no one, so far as I know, ever supposed that any property could be exempted from taxation, except that specifically permitted under article 2, section 28. In that instrument the convention spoke deliberately and advisedly, and in the light of a then recent history, and in the presence of enormous public evils, when it was said that "all property, real, personal and mixed, shall be taxed." The next clause shows that the members of the convention had in mind and intended to specifically limit the power of granting exemptions. If the language we

have just quoted had stood alone, it might have been construed under the principle that the sovereign is excepted from all laws by implication unless specifically mentioned therein. To avoid this implication the convention added: "But the legislature may except such as may be held by the state, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary, or educational, and shall except $1,000 worth of personal property in the hands of each taxpayer and the direct product of the soil in the hands of the producer and his immediate vendee." The exceptions, couched in the language used, strengthen the original command that "all property" shall be taxed. By the exception, taken in connection with the general command, it was intended to say, and it was said, as it seems to me, in a manner that ought to beyond misconception, that all property shall be taxed by the legislature, except the particular items specifically mentioned in the language which we have last quoted.

But it is further said in the opinion of Mr. Justice Lansden that it was meant only that all property held and owned by the citizens or taxpayers of the State should be taxed, with the exceptions mentioned, and that the section had no reference to property created by the State on its credit; that is to bonds issued for the purpose of sale based on the credit of the State. This distinction is without foundation. Besides, going far beyond the language used in the constitution, it overlooks the fact that bonds are not property until issued

and sold.  When issued and sold to the people of the State, they are then the property of those people, and not the property of the State itself.  An exemption of property so held and not included within the exception of the constitutional provisions would be a violation of the constitution.  That instrument exempts only the specific items mentioned in the language quoted from article 2, section 28.  This result cannot be escaped by the contention that the exemption clause in the funding act is only an incident to the power to issue bonds, and that the legislature, as the organ of the sovereign power, has the right to provide for the issuance of bonds.  The constitution cannot be violated incidentally, any more than it can be violated directly.  Morever, I do not think that a direct enactment to the effect that bonds shall be exempted from taxation can be called an incident.  It is insisted in the opinion of Mr. Justice Green that the bonds are only instrumentalities of the government, and, as such, they do not fall within the inhibitions of article 2, section 28.  Aside from what seems to me the inevitable construction of that section, to the effect that it was intended to cover the whole ground, it is clear that bonds issued by a State are no more instrumentalities of government than the buildings which the State uses for the transaction of its business; for example, the State Capitol, and the ground on which it rests and the furniture employed therein.  Still there can be no doubt that, on failure of the legislature to exempt this property under the authority given in article 2, section 28, it would have to go on the tax list just as

the property of any citizen of the State. In addition, it must be conceded that the only property of this State which can be rendered exempt by the legislature, under the permission given, is that which is "held and used;" not only property "used" by the State, but *"held"*—held and used. This precludes any idea that the State can create, sell, or grant property for a consideration, or without a consideration, and make it nontaxable in the hands of the vendee or donee, whether that property be stocks and bonds or lands, or in whatsoever form property may exist. The words "held and used," it seems to me, indicate beyond controversy that, after any property which the State owns passes out of its possession and ownership, it ceases to be "held and used" by the State, and must be liable to taxation.

The erroneous theories which I have been combating, and which have been combated in the opinion of Mr. Justice Williams, and in the concurring opinion of Mr. Justice Buchanan, are based, I think, upon a misconception of the power of the legislature. It is supposed to possess almost unlimited legislative power. It is true that the principle of constitutional construction recognized in text-books on constitutional law is that the legislature of a State has all of the powers of the people, except in matters wherein that power is limited expressly or impliedly by the constitution of such State, or by the constitution of the United States; that is to say, that the powers of a State legislature are not derivative but original; not delegated, but inherent. In contrast, it is said that the powers exercised by the federal government are derivative or delegated powers. Such is the general

statement occurring in many of the decisions of this court. In none of these decisions, however, so far as I can recall, was any consideration given to article 11, section 16, which speaks of the powers as *delegated* ones. That section reads: "The declaration of rights hereto prefixed is declared to be a part of the constitution of this State, and shall never be violated on any pretense whatever. And to guard against transgression of the high powers we have *delegated,* we declare that everything in the bill of rights contained is excepted out of the general powers of the government and shall forever remain inviolate."

The provisions with reference to legislative power, and the distribution of powers, are found in article 2, as follows:

"Section 1. The powers of the government shall be divided into three distinct departments: The legislative, executive and judicial.

"Sec. 2. No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases nerein directed or permitted.

"Sec. 3. The legislative authority of this State shall be vested in a general assembly, which shall consist of a senate and house of representatives, both dependent on the people, who shall hold their offices for two years from the day of the general election."

In this same article follows section 28, which contains the limitations on the taxing power of the legislature, and the limitation on its exempting power. Perhaps it does not matter practically whether, taking article 2,

section 3, in connection with article 11, section 16, it shall be held that legislative powers are delegated, or, adopting the principle of general constitutional construction, that they are inherent; since it is clear that, whether delegated or inherent, the constitution saddled upon the legislative power certain specific restrictions, and that in addition there are other restrictions to be implied from various sections of the constitution which need not be here referred to. It seems to me, therefore, bootless to inquire whether there can be any restrictions on inherent power. The power which our legislature possesses, no matter how described, must be held as restrained by every positive limitation imposed upon it in the constitution, to say nothing of implied restrictions. Any principle of construction which goes beyond this makes the constitution nothing more than blank paper, or at least nothing more than an instrument that can be whittled and carved at the will of the legislature, with the sanction of the courts. Our only safety lies in adhering to a strict construction. It is only thus that we can avoid the dangers against which the people intended to protect themselves. It is only thus that our feet can be guided by the lamp of experience. There is sometimes manifested a tendency to a latitudinous construction, in order to obtain what at the time seems a great present benefit to the State. Such tendency influences, occasionally, even the minds of wise and patriotic men; but others, we shall hope equally as wise and patriotic, feel that it is best to stand by the ancient landmarks, and profit by the wisdom garnered from the past by the experience of the people of the State, as formulated

and preserved in the venerable instrument whose terms we are considering today.

On the grounds stated, I concur in the opinion of Mr. Justice Williams. I believe that opinion is one based on sound principles, and it is strongly fortified by reasoning and authority.

MR. JUSTICE LANSDEN delivered a dissenting opinion as follows:

The public debt of the State, amounting approximately to $12,000,000, will become due and payable in July and October, 1913, and the State is without funds to meet this obligation. The legislature at this session has passed an act authorizing the refunding of the public debt, and has provided in terms for the issuance of $12,000,000 bonds bearing four per cent. interest, and due in forty years after date, and has forbidden the State, counties, and municipalities to tax the principal and interest of the new bond issue.

The question for determination in this case is whether the State has the power to provide that the bonds and their interest coupons shall not be taxed.

In the opinion of the majority, prepared by Mr. Justice Williams, the conclusion is reached that the State is without such power. To this result I cannot agree, and, the question being of such transcendent importance, I feel it but right and proper that I should express the grounds of my dissent.

This State is a sovereignty, and not a corporation. A fundamental error of the opinion of the majority is the assumption throughout that the legislature derives its

powers in respect of these matters from the State Constitution. The contrary is stated, but no effect is given it. It is elementary in American constitutional law that the legislatures of the various States represent the absolute and uncontrolled sovereign power of the people, and they are restrained from a course of action in any direction only by the constitution of the State and the United States, either expressly or by necessary implication. This principle is so well settled, and, to my mind, so thoroughly understood, that it needs no argument or elaboration. An examination of the bill of rights and the constitution itself will disclose that the language employed is that of restraint. It has been so adjudged by this court from its earliest history down to the present time. *Prescott* v. *Duncan,* 126 Tenn., 106, 148 S. W., 229; *Jackson* v. *Nimmo,* 3 Lea, 599; *Davis* v. *State,* 3 Lea, 377; *Knoxville & Ohio R. R. Co.* v. *Hicks,* 9 Baxt., 446; *Lynn* v. *Polk,* 8 Lea, 121; *Demoville & Co.* v. *Davidson County,* 87 Tenn., 220 10 S. W., 353; *Stratton Claimants* v. *Morris Claimants,* 89 Tenn., 497, 15 S. W., 87, 12 L. R. A., 70.

The act in question in all of its parts is an exercise of sovereignty by the legislature. The supreme court of the United States has held in numerous adjudged cases that bonds of the United States government cannot be taxed by the States, and bonds of the States cannot be taxed by the United States government, for the reason that such bonds are but instrumentalities of government. The power of the federal government to tax the bonds of the State, as well as the power of the State govern-

Keith v. Funding Board.

ment to tax the bonds of the general government, would be a power to embarrass each soverignty in the exercise of its governmental functions, which that court has wisely held does not exist. *McCulloch* v. *Maryland,* 4 Wheat., 316, 4 L. Ed., 579; *Weston* v. *Charleston,* 2 Pet., 449, 7 L. Ed., 481; *Bank of Commerce* v. *N. Y. City,* 2 Black., 620, 17 L. Ed., 451; *Collector* v. *Day,* 11 Wall., 13, 20 L. Ed., 22; *Ward* v. *Maryland,* 12 Wall., 418, 20 L. Ed., 449.

That the issuance of the bonds in question is an exercise of sovereign power is made more manifest by a consideration of the consequences that would ensue if the State did not provide for a refunding of its debt. As stated the debt is practically now due, and the treasury is without funds to pay it. The State must either refund its debt, default in payment of both principal and interest, or repudiate it. It has the power to do either. The fact that it can repudiate its solemn obligation demonstrates the nature of the power exercised in the passage of the act under investigation, because the power of repudiation exists only in a sovereign. For the same reason the act of refunding the debt to avoid repudiation is an act of sovereignty.

The question for our determination is one of power only. The policy of exempting bonds of the State from taxation is one solely for the determination of the sovereign legislative power, and has no place in the consideration of this court. If the power exists, the legislature must determine for itself whether or not it should be exercised. If it does not exist, it is the highest duty

of this court to so declare; and likewise, if it does exist, it is equally the duty of this court to uphold the legislation under consideration, and allow the legislature free rein in the provisions it may see proper to make for refunding the debt. The action of the legislature in passing this law is conclusive evidence to this court of the sovereign purpose to exempt the bonds from taxation behind which no inquiry can be made.

In the outset, I desire to freely concede that in legislative matters the State can only act through her constitutional agent, the legislature; and that an unconstitutional statute cannot form the basis of a lawful contract; and that every part of the constitution must be considered in determining whether the power claimed for the legislature exists; and that limitations upon the power of the legislature may be supported by implication, but with the qualification that the implication employed to curtail sovereign legislative powers must be found to exist in the constitution itself. *Prescott* v. *Duncan*, supra.

In my view, the real question for solution is whether section 28 of article 2 of the constitution is an inhibition on the power of the State to issue bonds to refund its public debt. Stated differently, the question is whether the people, in adopting this section of the constitution, intended that it should apply to a sovereign act of the State in providing for its public debt, or whether it was merely intended to provide against exemptions and discriminations as between citizens and taxpayers of the State. And this depends again upon whether the power of taxation and the power to refund the public debt are

one and the same power, because there is no express constitutional limitation upon the power of the State to issue bonds for this purpose, and if such restriction exists, it must be found to be implied in the prohibition against exemptions from taxation.

"Sovereignty as applied to States," says Judge Cooley, "imports the supreme, absolute, uncontrollable power by which any State is governed." A State is a sovereign when the supreme power resides within itself. In American constitutional law, the people are the State and all power resides in them. By our constitution, they have vested the supreme legislative power in the legislature, and this power is limited only by the restrictions of the constitution. The constitution does not mention a public debt, nor does it contemplate any future action upon the part of the legislature in refunding debts existing at the time it was adopted, or borrowing money for future debts or for any other governmental purposes. Therefore the power of the legislature to issue these bonds for public purposes is absolute, unrestrained, and unqualified, unless section 28 of article 2 was intended to impose the limitations therein stated upon the sovereign power of the people to preserve the public honor and the public faith.

The history of this section of the constitution is well known. This court, in construing the constitution of 1834, held in numerous cases that the legislature might exempt any species of property from taxation which it might deem proper. Those cases were in full recognition of the sovereign power of the legislature as here stated,

because the constitution of 1834 provided: "All prop-
erty should be taxed according to its value; that value to
be ascertained in such manner as the legislature shall
direct, so that the same shall be equal and uniform
throughout the State. No one species of property from
which a tax may be collected shall be taxed higher than
any other speices of property of equal value."

Under this constitution, as construed by this court,
the legislature granted numerous exemptions to corpora-
tions organized by it under section 7 of article 11, so
that when the convention met to prepare a constitution
in 1870, it was realized that the discretion of the legisla-
ture to exempt property from taxation had been grossly
abused. Therefore, it was provided in the latter instru-
ment, in section 28 of article 2, "that all property, real,
personal or mixed, shall be taxed, but the legislature
may exempt such as may be held by the State, by coun-
ties, cities or towns, and used exclusively for public or
corporation purposes, and such as may be held and used
for purposes purely religious, charitable, scientific,
literary or educational, and shall exempt $1,000 worth
of personal property in the hands of each taxpayer, and
the direct product of the soil in the hands of the pro-
ducer and his immediate vendee."

The evil intended to be remedied by the foregoing pro-
vision of the new constitution was manifestly the arbi-
trary discrimination between taxpayers, which had
amounted to a destruction of the equality of burdens
necessary to the enjoyment of free government. This
section can refer to nothing more than the practice of

exemptions which had grown up under the constitution of 1834. It has no reference to the exercise of the sovereign power of the people to preserve the public credit and the public faith. It is true that the constitution contains exceptions to the general words that "all property shall be taxed." It is equally true that exceptions from the general statement of the limitation of power mark the extent of the limitation, and that the exceptions strongly indicate the intention of the framers of the constitution that no other should be allowed. But it is also true that this exception is only an exception to the limitation upon the power to which the general words have reference. This, as well as the meaning of the general words, is shown by the fact that the exception refers to the State, counties, and municipalities only in their capacity of property owners. The exception allowed is as to property "held . . . and used exclusively for corporation purposes." Therefore, while the exceptions strengthen the limitation upon the power of exemption from taxation, they cannot add to the scope or meaning of the limitation itself.

The power exercised by the legislature in the passage of the act in question is a far different thing to the power circumscribed by this section of the constitution. One is the power to tax for the purpose of raising revenue to defray the ordinary expenses of government, and the other is the power to preserve the public credit. They are both attributes of sovereignty, and neither is conferred by the constitution. Section 28 of article 2 is a direct and express limitation upon the former and makes

no reference to the latter  They have existed coequally with the State itself, and both inhere in all free governments.    They are not the same, and one is not controlled by limitations upon the other.

The power to issue long-term negotiable interest-bearing bonds is the power to make a contract.   At the same time it is an extraordinary power, because the bonds are contracts with no particular contractee, and are issued to avoid repudiation of the public debt, or confiscation of the people's property by the levy of sufficient taxes to raise the principal debt due at one time.   The levy, assessment, and collection of public taxes does not rest in contract, but it is a tribute exacted of the citizen by the government, and rests alone upon the inherent power of the State to preserve its own existence.   Funds can be realized from the sale of bonds only by the free and voluntary consent of the purchaser, while revenues derived from taxation are always *in invitum*, and the consent of the taxpayer is never inquired into.   It is true that funds to pay the principal and interest of the bonds must be raised by taxation, but this fact does not prove that the two powers are the same; but instead it demonstrates that the power of taxation is merely an incident of the power of pledging the public credit.   The public credit involves not alone the ability of the public to pay, because the State can repudiate.   It involves equally, and just as valuable and important an element of value, the good faith to perform, and the moral sense to realize, the public obligation to creditors, coupled with a power to freely contract to this end in such way and upon such

terms as the people may desire. If the power to contract with creditors is restricted, the public credit is impaired in precisely the same degree. What State can call itself sovereign, if it is fettered in the preservation of its credit? The power to create a debt necessarily involves the power to pay it. The power to pay includes payment upon such terms and in such way as creditor and debtor may agree. This power is not restricted by the mandate that "all property . . . shall be taxed."

Flowing from the power to contract with creditors, and as a natural result of it, the interest-bearing evidences of the contract will necessarily be property in the hands of taxpayers. It is only by delivering the bonds to purchasers that funds to meet the State's necessities can be realized. But when they are delivered to purchasers in payment of existing indebtedness, and as a direct result of the power of the sovereign to contract to that end, they are not taxable. They are instrumentalities of government, arising out of a free and untrammeled exercise of the sovereign power of the people to provide for their necessities, and flowing from that great and inexhaustible source of natural power, **absolute in its quantity and quality, and limited alone by self-imposed restraints. That these bonds in the hands of purchasers, issued and paid for, are not taxable by the terms of their existence, does not make a case of exemption from taxation in favor of the holder, seems entirely clear to my mind. That the power which is to issue them and cast them upon the markets is not the taxing power seems entirely clear. That the fact that**

they are not taxable is not an exemption in favor of any particular taxpayer, but merely an incident of their creation arising out of the power of the sovereign to issue them seems equally clear.

The distinction sought to be drawn here is recognized by the most eminent authority. This court has previously done so, and in *Lynn* v. *Polk*, 8 Lea, 179, it was said, quoted from Mr. Greenleaf:

"An important distinction should be observed between those powers of government which are essential attributes of sovereignty, indispensable to be always preserved in full vigor, such as the power to create revenues for the public purposes, to provide for the common defense, to provide safe and convenient ways for the public necessity and convenience, and to take private property for public uses, and the like, and those powers not thus essential, such as the power to alienate the lands and other property of the State, and to make contracts of service, and of purchase and sale, or the like. Powers of the former class are essential to the constitution of society, as without them no political community can well exist; and necessity requires that they should continue unimpaired."

It is most significant that the convention should have failed to express any limtations upon the power of the State to issue its bonds, while carefully restraining its power to exempt from taxes. There was a State debt at the time the constitution was adopted, provision for which the convention must have realized would have to be made. The financial condition of the State forbade

its payment in cash.   The convention put definite restrictions upon the taxing power, but made no mention of the power of the State to issue bonds for the funding of its debt.   This strengthens the view heretofore stated that the object and purpose which the convention had in mind in adopting section 28 of article 2 were to prevent a continuance of exemptions from taxation as between citizens and taxpayers.

No reason existed then, and none has been suggested now, why this section of the constitution should be considered as referring to the credit and good faith of the State.   Nothing in the experience of the people under the previous constitution had occurred to suggest such a limitation upon the exercise of this sovereign power to promote the public welfare.

It can be stated with great emphasis and perfect confidence that no case is cited in the opinion of the majority, and none has been found by counsel, from any jurisdiction of the English-speaking people contrary to the views herein expressed.   *Berryman* v. *Trustees*, 222 U. S., 334, 32 Sup. Ct., 147, 56 L. Ed., 225, does not support the opinion of the majority, because that involves the power of a territory, which has no sovereignty, and has only such powers as the congress gave.   All the cases cited by the majority, except *Lynn* v. *Polk*, are cases dealing with attempted exemptions by the legislature in levying assessments and collections of taxes as between citizens. In every one of those cases there was no contention that the validity of the legislative enactment was not controlled by section 28 of article 2 of the constitution.

General expressions in a number of them, if deemed to be applicable to this case, are authority against the power of the legislature to forbid the taxation of the proposed bonds. But it is not claimed, as I understand, that any case in which those expressions are used involved the question to be decided here. The power of a State to so exempt an issue of its bonds has been recognized in every jurisdiction to which my attention has been called, in every case involving this and similar questions. It was expressly recognized in *Pullen* v. *Corporation Commissioners*, 152 N. C., 548, 68 S. E., 155; *Lumberton Improvement Co.* v. *Robson Co.*, 146 N. C., 353, 59 S. E., 1014, and also *Newark City Bank* v. *Assessor*, 30 N. J. Law, 13, and numerous other cases.

While it is true that the particular point under consideration in this case was not decided or discussed by the courts in the cases last above cited, it is also true that the power of the State to exempt its bonds from taxation was conceded by the court, and apparently not denied by counsel. Instead of weakening the case, in my view this strengthens it, because it evidences a general consensus of opinion in those jurisdictions that the power exists beyond dispute. The power denied to the State by the opinion of the majority may some day involve its very power to exist. It denies it the power to go upon the open money markets of the world and compete for money upon equal terms with other sovereign States who are not so hampered. It denies to it the power to provide a security of equal attractiveness to its own citizens with that of other governments of no better

Keith v. Funding Board.

credit.  It places the State in the ungenerous attitude of asking the public to advance money upon its securities which the State is bound to render unprofitable by enforced taxation.  The power to tax is the power to destroy, and to levy a tax upon the face value and interest of the State's bonds is to that extent a depreciation of their value, and consequently of the State's credit.  I state this, not to indicate a choice of policy, but to show that under the holding of the majority this great State is not a free, sovereign State, but that it has bound its hands, unwittingly as I believe, so that it cannot exercise the power common to all other free governments of preserving its credit.

The time may come when a great financial stress will involve the entire country, during which the necessity of the State to raise more funds in large sums will suddenly arise, and the need of its credit, unimpaired by the limitation here imposed, would be the most pressing.  I cannot believe that the framers of the constitution intended, by denying to the legislature the power to discriminate between taxpayers, by granting arbitrary exemptions to some and denying it to others, to thereby curtail its power to provide in the most efficient way possible, and in such way as its patriotism and judgment might suggest, for the preservation of the credit and good faith of the people of the State.

MR. JUSTICE GREEN delivered a dissenting opinion as follows:

Concurring generally with the views expressed by Mr. Justice Landsden, I reached this result by a somewhat

different process of reasoning. The proposition advanced by the attorney general, and sustained by authorities referred to in his brief and in the opinion of Mr. Justice Williams is that by reason of the provisions of section 28, article 2, of the constitution, the legislature is forbidden to exempt from taxation any property except that designated therein as being subject to exemption.

In my opinion, a tax upon State bonds is not a tax upon *property*, as that word is used in this section of the constitution.

While State bonds are property, and a tax upon them is primarily exacted of the holder, such a tax goes beyond the holder. It goes back of the bondholder, and reaches the State itself. The value of the State's securities, and its ability to realize upon them, is dependent upon the burdens or conditions attached to the ownership thereof. To the extent that bonds are taxed, to that extent is their value depreciated. To that extent is the State's power to borrow money embarrassed. As such taxation lessens the price for which said bonds will sell, and decreases the amount they will bring, it is obvious that, when an issue of bonds is to be negotiated by the State, the treasury of the State at last bears the burden of such taxation.

This is no new idea, but has long been accepted as true.

In the case of *Weston* v. *Charleston*, 2 Pet., 449, 7 L. Ed., 481, in which the legality of a tax attempted to be levied upon bonds of the United States was considered,

the court considered this question in all its aspects, and the final conclusion as announced by Chief Justice Marshall was:

"The tax on government stock is thought by this court to be a tax on the contract, a tax on the power to borrow money on the credit of the United States, and consequently to be repugnant to the constitution." *Weston* v. *Charleston,* supra.

This conclusion has been generally accepted since that time, and the courts of the United States will not permit taxation of government bonds, nor taxation by the government of State's bonds, inasmuch as such taxation is held by that court to be directed against the credit of the government in the one case, or the State in the other. See citations contained in Rose's notes, *Weston* v. *Charleston,* supra. To issue bonds is to employ a common agency for raising funds. Such bonds are but instrumentalities of credit. They are incidents of the right to contract.

"It may be safely asserted that nothing is better settled than that securities issued by the government are as much the instrumentalities of the government as other means adopted by it to perform its functions." *Penick* v. *Foster,* 129 Ga., 217, 58 S. E., 773, 12 L. R. A. (N. S.), 1159.

Must the State tax its own agencies, its own instrumentalities? Does the constitution require this? If we concede, under the peculiar language of our constitution, that even State property must be taxed, unless exempted therefrom by legislative action, still it does not follow

that by reason of this constitutional provision the State's right of contract must be taxed. The mandate to tax property does not mean that contract rights or State agencies or instrumentalities must be taxed. These things are not included within the meaning of the term *property*.

There is a well-established distinction between public property and public instrumentalities in respect to taxation.

In *McCulloch* v. *Maryland*, 4 Wheat., 316, 4 L. Ed., 579, it was held that a tax attempted to be levied by the State of Maryland upon a branch of the Bank of the United States located in Baltimore was invalid. It was said that this bank was but an agency of the government, created to aid the fiscal operations of the government, and no State would be permitted to tax such an arm or agency of the government. On the other hand, it was held that if this government agency acquired real estate, property which it held just as individuals hold property, such property might be taxed by the State.

To tax a government agency is to retard, impede, or burden that agency; but property acquired by such an agency was placed in the same condition as property acquired by the individual. *McCulloch* v. *Maryland* and *Weston* v. *Charleston*, supra.

So when the State acquires property, real or personal, which it holds as an individual would hold such property, this property under our constitution is subject to tax, unless exempted by the legislature.

This provision of the constitution, however, relates to

porperty alone, and does not refer to the State's right to contract, or its agencies and instrumentalities. These things are not *property* as the word is here used.

The constitution of Georgia provided that all property should be taxed except public property. After a full consideration of the subject, and a review of the cases, it was held by the Georgia court that a municipal bond was not property within the meaning of the constitution. *Penick* v. *Foster,* 129 Ga., 217, 58 S. E., 773, 12 L. R. A. (N. S.), 1159.

The supreme court of Louisiana, construing a provision of the constitution of that State that all property should be taxed, held that this provision did not require a tax upon bonds issued by one of the municipalities of the State. The court said:

"Nor can it be successfully opposed to this view that the words 'all property should be taxed' are too clear and unambiguous to leave room for construction. On the contrary, such general terms and expressions are constantly subjected to construction, and it may be said that they are never allowed their full literal import. To do so would be to extend their intent to subjects which the State has clearly no power to tax, such as bonds of the United States and other means and instrumentalities for the exercise of the powers delegated to the federal government, and to other subjects, such as the salaries of judges, public property (though this is expressly exempted), and the like, which though it is within the power of the State to tax, are yet considered on fundamental principles to be nontaxable." *State, ex*

*rel. Da Ponte,* v. *Board of Assessors,* 35 La. Ann., 651.

It cannot be successfully contended under Tennessee authorities that by reason of the language of our Constitution there can be no such thing as an implied exemption from taxation.

In *Nashville* v. *Smith,* 86 Tenn., 213, 6 S. W., 273, it appeared that the city of Nashville operated a waterworks system, selling water to consumers, and conducting this plant generally as water companies conduct their business. The revenue act provided that water companies were liable for a privilege tax of $600 per annum, and it was sought to collect this tax from the city of Nashville for exercising this privilege.

The court pointed out that there was no act of the legislature exempting municipalities from the payment of privilege taxes; that the only exemption of municipalities was from *ad valorem* taxation with respect to property used exclusively for municipal purposes. The court said:

"So that there is not to be found in our statutes any express exemption to the city from the tax against which complaint is made in the petition. But we think an express statutory exemption is not required to enable the city to avoid the payment of the tax in such a case as this. Some things are always presumptively exempted from the operation of general revenue laws, because it is reasonable to suppose that they were not within the intent of the legislature. It cannot be supposed that the legislature would ever lay the burden of taxation upon public property; therefore, however general may be the

enumeration of property for taxation, the reasonable conclusion is that the property held by the State and its municipalities for governmental purposes was intended to be excluded, and the law will be administered as excluding it in fact.  Cooley on Taxation, 172; 1 Desty on Taxation, 48, sec. 16."  *Nashville* v. *Smith,* supra.

In the above case, the city waterworks were held to be exempted by implication from the payment of the privilege tax laid upon all water companies.  It was not supposed that the legislature, in assessing this privilege tax, intended it to operate against and burden the attempt of any municipality to supply water to its citizens.

So, in construing the constitutional provision as to taxation, we must presume that some things were exempted from its scope, because they cannot reasonably be supposed to have been within the contemplation of the framers of that instrument.

It could not have been intended by the convention to compel the State to levy any tax which would have to be borne by the State itself.  The object of taxation is to bring money into the treasury.  The mandate to tax all property has for its purpose the augmentation of the State's funds.  This provision does not enjoin inconsistency.  It was never meant to force taxation of property, when that property was of such nature that to tax it was to tax the State.

The mistake of the majority is in their failure to differentiate State bonds from other property.  As subjects of taxation, such bonds have peculiar and distinguishing characteristics.  This difference was long ago

recognized by the supreme court of the United States, as heretofore pointed out. To tax such bonds is to tax the sovereign's credit. The makers of our constitution must have appreciated this distinction, and could not have intended to refer to the State's securities in the provision that all property should be taxed. At any rate, in the emergency now confronting us, this court should follow the courts of Louisiana and Georgia, and, as this court and all courts have done before, when the good of the public requires, consider the welfare of the State as well as the dictionary in defining and construing language of the constitution.

The importance of preserving to the State the right to the free use of its credit has been stressed in the opinion of Justice Lansden, and nothing further need be said upon that subject.

In the absence of explicit language in the constitution depriving the legislature of the power to exempt these bonds from taxation, I am unable to reach the conclusion that they are without such power. As seen before, this tax is in reality borne by the State, and I cannot believe that it was the intention of the constitution to force the State into the inconsistency of taxing itself.